509 A.2d 863

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Joseph LAGANA, Appellee.**

Supreme Court of Pennsylvania.

Submitted Dec. 5, 1985.

Decided May 7, 1986.

478

Eric B. Henson, Deputy Dist. Atty., Steven J. Cooperstein, Philadelphia, for appellant.

John W. Packel, Chief/Appeals Div., Asst. Public Defender, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

This appeal is from an order of the Superior Court, 334 Pa.Super 100, 482 A.2d 1101, affirming an order of the Court of Common Pleas of Philadelphia. The latter court had granted appellee's motion to suppress evidence on the basis of collateral estoppel.

The relevant history of this case is as follows. On the evening of May 11, 1981, a police officer stopped appellee while the latter was standing on a street corner in Philadelphia. At the time the officer was responding to a radio call which indicated that a man with a gun was present on the corner. Appellee fit the description which the officer had received,[1] and at the time of the stop appellee was engaged in what could have been considered suspicious activity, in that he was standing in the rain observing a sandwich shop through a pair of binoculars. Since the officer believed that the man was armed, he conducted a pat-down of the appellee, which revealed a .32 caliber revolver located in appellee's pants. Appellee was then arrested on suspicion of violating the Pennsylvania Uniform Firearms Act.[2]

Prior to appellee's actual arrest the police officer noticed two carrying cases which were on the ground nearby. When asked if the cases belonged to him, appellee responded in an ambiguous manner. The cases were seized and taken into custody along with appellee. Upon arrival at the police facility the two cases were examined without search warrant authority. This search revealed various articles, which later proved to be the fruits of a burglary.[3]

Appellee was charged separately with a firearm violation and with burglary. For reasons which do not appear of record the Commonwealth did not consolidate these matters

---

1. That description indicated that the subject was a white male, between the ages of 20 and 25 years, and wearing a yellow raincoat.

2. Act of December 6, 1972, P.L. 1482, No. 334, § 1 et seq.

3. These articles included binoculars, cameras, watches, and a coin collection.

480

and they proceeded through the system separately. Consequently, defense counsel filed separate motions to suppress.

On August 28, 1981, a suppression hearing was held on the burglary matter before the Honorable Nelson Diaz. Judge Diaz held that the burglary evidence was to be suppressed because the initial contact between the officer and the appellee constituted an arrest, as opposed to a *Terry* stop; and that since there was no evidence regarding the reliability of the police radio information, the arrest was without probable cause. The Commonwealth chose not to appeal Judge Diaz' decision and instead elected to *nolle pros* the burglary charge.

On September 8, 1981, a suppression hearing was held on the firearms matter before the Honorable Eugene H. Clarke, Jr. No evidence was taken at this hearing. Rather, after receiving memoranda and hearing argument, Judge Clarke ruled that by operation of collateral estoppel Judge Diaz' findings of fact and conclusions of law were binding on him in this second prosecution. Consequently, he suppressed the physical evidence, i.e., the gun.

On appeal, a three judge panel of the Superior Court (Spaeth, P.J., Montemuro, and Popovich, JJ.) in an opinion by President Judge Spaeth, affirmed.[4] Upon petition for allowance of appeal we granted allocatur.

The issue which is now before us is whether collateral estoppel should apply to pre-trial suppression rulings where separate prosecutions arise from a single arrest. Both parties agree that this is an issue of first impression in this Court.

In *Commonwealth v. Brown*, 503 Pa. 514, 469 A.2d 1371 (1983), this Court discussed the concept of collateral estoppel as it relates to criminal prosecutions. *See also, Commonwealth v. Hude*, 492 Pa. 600, 425 A.2d 313 (1981). In *Brown*, we acknowledged that collateral estoppel has definitive constitutional status whenever one is twice put in jeopardy, essentially adopting the approach of the United States Supreme Court which considered collateral estoppel

---

4. The Honorable Zoran Popovich concurred in the result.

under the rubric of the Fifth Amendment protection against double jeopardy. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Under that approach collateral estoppel is compelled in a second proceeding if jeopardy had attached in the first matter.

There is no question under the facts of this case that jeopardy had not attached in the first suppression hearing. Therefore, there certainly is no constitutional bar to relitigating a suppression motion during the course of a second prosecution. The question remains however, as to whether the application of collateral estoppel is advisable as a matter of sound judicial policy.

A variety of our sister state jurisdictions have wrestled with the instant problem. Their solutions range from the Illinois approach, wherein collateral estoppel is strictly applied in situations like the present;[5] to the Florida approach, wherein collateral estoppel has been held applicable only if jeopardy attaches, thus precluding the application of the principle to pre-trial suppression orders.[6] *See also, State v. Doucet,* 359 So.2d 1239 (La.1977) (on Rehearing); *State v. Gonzalez,* 75 N.J. 181, 380 A.2d 1128 (1977). Regardless of the approach taken, the basis for favoring one approach as compared with another has depended upon the jurisprudential policies sought to be furthered.

In this case the Superior Court bottomed its solution on its appraisal of such policy considerations. Those considerations included the possibility that a defendant may be tried with illegally seized evidence; that a defendant may be subjected to harassment by the Commonwealth; that judicial economy dictates that the Commonwealth should be required to present its entire position in one proceeding rather than bringing piecemeal prosecutions; and that fairness dictates that a defendant should be allowed to rely on a prior favorable decision. The court held that these concerns outweighed the Commonwealth's argument against perpetuating possibly erroneous rulings.

5. *People v. Williams,* 59 Ill.2d 557, 322 N.E.2d 461 (1975).

6. *State v. McCord,* 402 So.2d 1147 (Fla.1981).

This Court is the ultimate arbiter of legal policy in this Commonwealth, *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985), and we disagree with the Superior Court's weighing of the competing concerns present in this case.

Firstly, the expressed concern of risking a trial tainted by illegally seized evidence, merely because that evidence could be twice contested, seems frivolous at best. An assessment of the legality of the seizure of evidence is the very purpose of a suppression hearing. The mere fact that a defendant could be required to twice prove his assertion does not necessarily cast doubt upon the second determination if a record supports that decision. The decision is an independent judgment which must stand or fall on its own merit.

Secondly, the contention that a defendant may be subject to harassment by the Commonwealth also is baseless; for it ascribes to the Commonwealth a vindictiveness that is not borne out by this record.

The lower court also supposes that the absence of collateral estoppel will somehow be a temptation to the Commonwealth to bring piecemeal prosecutions so as to maximize their chances of success. We do not accept this supposition, as we are confident that the Commonwealth will follow the fundamental rule that charges arising out of the same criminal transaction should be consolidated. *See* Pa.R. Crim.P. 131(b); *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432 (1973).

Finally, concerning the Superior Court's "fairness" consideration, we question whether "fairness to the defendant" is such a laudatory policy goal when it is gained at the expense of perpetuating an erroneous ruling, thereby unfairly terminating a legitimate prosecution.

All in all, we are unpersuaded by the Superior Court's policy arguments, and consequently we cannot accept their proposed solution. That is not to say however that there are no policy considerations favoring the application of collateral estoppel to suppression hearings. One of the

most important of these is the sound policy of avoiding having judges of equal jurisdiction, sitting on the same bench, overruling each other on the same record.

In the present context we believe that some limited form of collateral estoppel is dictated, since it would have the beneficial effect of discouraging the relitigation of the same issues based on the same evidence, while at the same time preventing judges of equal jurisdiction from entering diverse rulings on the same evidence. However, these benefits do not offset the potential negative impact of perpetuating an erroneous ruling.

The solution for this dilemma is to have the ruling of the first suppression hearing incorporated into the record of the second hearing, and to allow review of the first decision on appeal as if it had been entered anew.

Thus, in those instances where two prosecutions arise out of a single search and/or seizure, a decision by a suppression judge during the first prosecution can, upon the motion of the previous prevailing party, become part of the second prosecution. The party against whom this decision is being offered may offer any new evidence which was previously unavailable. *See generally* Pa.R.Crim.P. 323(j). Absent such new evidence the suppression judge in the second prosecution must adopt the findings and conclusions of the first judge, and incorporate them into the record. Thereupon, the party against whom the first decision is offered may have the validity of the decision reviewed on appeal.[7]

Considering the instant case, defendant was arrested and charged with burglary (based on the contents of the carrying cases), and a firearms violation. For reasons not stated of record the charges were not consolidated and each followed a path of its own. The first to surface was the burglary charge against which a motion to suppress was filed. The suppression court held that the police officer's

7. We note that a similar procedure has been utilized by the Superior Court when it was the defendant against whom collateral estoppel was imposed. *See Commonwealth v. Bastone,* 262 Pa.Super. 590, 396 A.2d 1327 (1979); *Commonwealth v. Ryan,* 253 Pa.Super. 92, 384 A.2d 1243 (1978).

initial stop of the defendant violated *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); and the subsequent seizures of the gun and fruits of the burglary were suppressed.

The Commonwealth, though it disagreed with the suppression court's ruling on the *Terry* issue, chose not to appeal this decision because they believed that the fruits of the burglary may have been suppressible on the independent basis of the failure of the police to obtain a warrant prior to examining the contents of the cases. Since an appellate court may affirm the decision of a lower court on a different basis than that offered below, the Commonwealth believed that appeal of this first decision would have proved to be a waste of resources. They therefore merely *nolle prossed* the first prosecution.

Next, however, the gun charge surfaced, and a new suppression motion was filed before a different judge before whom was argued the collateral estoppel question at issue here. The second judge deemed himself powerless to overrule his coordinate colleague, since the same evidence and the same issue were involved, i.e., whether there was a valid *Terry* stop. From that ruling the Commonwealth appealed. The reason the Commonwealth chose to appeal this ruling was that the *Terry* issue was the only possible basis upon which the seizure of the gun depended. Thus, the Superior Court would have been required to affirm or reverse the suppression ruling by passing on the correctness of that single issue. We see nothing wrong with permitting review in this type of situation.

■ In short, while suppression judges must accept the rulings of their fellows upon the same facts, an appellate court should be permitted to determine whether the facts relied upon by both support the conclusion of the one, and the reliance by the other. Since the ruling of one judge becomes the core of another judge's decision it is in the best interest of all concerned that the party against whom it is offered have the matter open for appellate review. Additionally, while we do not expect, and in fact firmly discourage repetitions of this type of scenario, we see no reason

why a party who has exercised discretion in refusing to appeal a suppression ruling should be bound in a subsequent proceeding, especially where the initial ruling may have been erroneous.

Accordingly, the order of the Superior Court is reversed and the case is remanded to that court for proceedings consistent with this opinion.

NIX, C.J., concurs in the result.

HUTCHINSON, J., concurs in the result and files a separate concurring opinion.

ZAPPALA, J., concurs in the result.

HUTCHINSON, Justice, concurring.

I concur in the result, on the basis of the facts before us. I am concerned, however, that the majority in its effort to prevent "judges of equal jurisdiction from entering diverse rulings on the same evidence," is merely adding another interlocutory appeal to the criminal justice process. *See Commonwealth v. Dugger*, 506 Pa. 537, 548, 486 A.2d 382, 387 (1985) (Hutchinson, J. concurring).