613 A.2d 581

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Fred ANTHONY, Appellee.**

Superior Court of Pennsylvania.

Argued March 25, 1992.

Filed Aug. 18, 1992.

84

Norman Gross, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Peter Scuderi, Philadelphia, for appellee.

Before McEWEN, KELLY and HOFFMAN, JJ.

KELLY, Judge:

In this appeal, we are called upon to determine whether in a proceeding for the return of property, a Court of Common Pleas is collaterally estopped from undertaking an independent review of an order granting a suppression motion entered by the Philadelphia Municipal Court in a prior criminal prosecution. We conclude it is not and reverse.

## FACTS AND PROCEDURAL HISTORY

Armed with a search warrant, police seized from the home of appellee, Fred Anthony, $3,709.00, two telephones, and other documents purportedly establishing appellee's involvement in an illegal gambling operation. On August 10, 1988, the Philadelphia Municipal Court suppressed all of the seized evidence on the grounds that the warrant application failed to establish probable cause. The Commonwealth did not appeal this suppression ruling, but rather chose to withdraw the charges of illegal bookmaking and conspiracy.

On August 15, 1988, appellee filed a petition pursuant to Pa.R.Crim.P. 324[1] in the Court of Common Pleas for the return of the confiscated money and telephones. The Commonwealth challenged appellee's petition, arguing that this seized money constituted derivative contraband subject to forfeiture under Pa.R.Crim.P. 324(b).[2] The trial court found itself bound, by operation of the doctrine of collateral estoppel, to the previous order granting suppression in the Municipal Court, and ordered the property returned.[3] On March 23, 1990, the trial court denied the Commonwealth's motion for reconsideration. This timely appeal followed.

On appeal, the Commonwealth argues, *inter alia,* that the trial court erred in considering itself bound by the Municipal Court's probable cause determination. The gravamen of the Commonwealth's argument on appeal is that the trial court, in a petition for the return of property, exercises appellate jurisdiction over the validity and propriety of prior Municipal Court suppression rulings. Acting in such a capacity, the Commonwealth asserts, the trial court is immunized from the

1. Rule 324 provides, in pertinent part,
   (a) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he is entitled to lawful possession thereof. Such motion shall be filed in the Court of Common Pleas for the judicial district in which the property was seized.
   (b) The jury hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

2. The Commonwealth's right to seek forfeiture is not, in any way, handicapped because it failed to appeal the Municipal Court's suppression ruling. As our Supreme Court explained in *Commonwealth v. Lagana,* 510 Pa. 477, 509 A.2d 863 (1986), the Commonwealth may have other reasons for not appealing the suppression determination in the first prosecution apart from the belief that the court improperly suppressed evidence. The instant case presents analogous considerations. The Commonwealth may have felt that it would have difficulty in proving its case beyond a reasonable doubt. Therefore, the Commonwealth may have refused to pursue the underlying charge.

3. The trial court did indicate that had it considered the suppression motion in the first instance, it would have denied the motion. N.T. 3/23/90 at 2.

operation of collateral estoppel, and it is fully authorized to independently review suppression motions entered by the Municipal Court. The Commonwealth submits that the trial court's failure to independently review the Municipal Court suppression ruling resulted in the return of property to appellee that should have been otherwise forfeited as derivative contraband.

In response, appellee contends that the trial court properly concluded that the operation of collateral estoppel precluded it from re-litigating the propriety of suppression rulings entered by the Municipal Court in a prior criminal proceedings, especially since the Commonwealth failed to present evidence that had not been already presented to the Municipal Court that would justify such a review. Appellee argues that this result is compelled by the well established prohibition against courts of equal jurisdiction entering diverse rulings based on the same record. Because, appellee maintains, the trial court stands on equal jurisdictional footing as the Municipal Court, permitting review under these circumstances is impermissible.

In granting appellee's motion for the return of property, the trial court essentially embraced appellee's position on appeal. After a careful review of the relevant law, we conclude that the trial court erred in doing so.

## FORFEITURE

■ Initially, we note that the Commonwealth's burden in forfeiture proceedings is a preponderance of evidence standard. *See Estate of Peetros v. County Detectives & District Attorney's Office*, 341 Pa.Super. 558, 492 A.2d 6 (1985) (citing *Commonwealth v. Landy*, 240 Pa.Super. 458, 362 A.2d 999 (1976)). Despite the lesser standard, the quasi-criminal nature of forfeiture proceedings is undisputed. *See Petition of Maglisco*, 341 Pa.Super. 525, 491 A.2d 1381 (1985). Disgorging from individuals property linked to criminality manifests the underlying purpose of such proceedings to punish those engaged in illegality. *See One Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (citing

*Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886)).

This is not to say, however, that the Commonwealth's right to seek forfeiture is contingent upon the result in a criminal prosecution. *Commonwealth v. One 1988 Ford Coupe VIN # 1FABP41A9JF143651,* 393 Pa.Super. 320, 574 A.2d 631 (1990).[4] Regardless of whether a conviction can be gained from the evidence, the Commonwealth may seek to forfeit property as long as it establishes that the property constitutes contraband. There are two distinct categories of contraband subject to forfeiture. First, contraband per se is property which is inherently illegal, and which absent further evidence, subjects its possessor to criminal sanction. Second, derivative contraband is property which is itself innocent, but which nonetheless, constitutes the fruit of some criminal enterprise, or is used to perpetrate an unlawful act. *Estate of Peetros v. County Detectives & District Attorney's Office, supra.* The status of property deemed to be contraband per se effectively precludes repossession under all circumstances, since its return would require the Commonwealth to subvert the legitimacy of laws prohibiting its possession. In sharp contrast, the inherently innocent nature of derivative contraband requires the Commonwealth to prove that the property seeking to be forfeited is the fruit of, or an instrument used to further illegality.

However, it is a well-settled proposition of law that the Commonwealth may not permanently acquire derivative contraband which it has initially seized unconstitutionally.[5]

4. *See also One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (acquittal does not bar forfeiture); *Commonwealth v. Two Electronic Poker Game Mach.,* 502 Pa. 186, 465 A.2d 973 (1983) (property may be forfeited despite fact that owner has no knowledge of its unlawful use); *Devito v. United States Dept. of Justice, DEA,* 520 F.Supp. 127 (D.Pa.1981) (property owner's innocence or good faith cannot be asserted as defense against forfeiture).

5. Of course, the validity of seizures involving contraband per se is irrelevant. The suppression of contraband per se at a criminal prosecution does not require the Commonwealth to return such property to the owner at a subsequent return of property proceeding. The Commonwealth's right to forfeit is absolute under these circumstances. To

Because of the underlying penal purpose of the forfeiture proceedings, the United States Supreme Court has long ago determined that the remedy for violations of the Fourth Amendment, the exclusionary rule, extends to forfeiture proceedings. *One 1958 Plymouth Sedan v. Pennsylvania, supra.*

In the instant case, the trial court did not reach the ultimate question of whether the Commonwealth had established that the evidence was sufficiently linked to illegal bookmaking. Instead, the trial court refused to grant the Commonwealth's request for forfeiture based on the *Municipal Court's* determination that the alleged derivative contraband was illegally seized. This, we conclude, was error.

## COLLATERAL ESTOPPEL

The general rule regarding collateral estoppel is well settled:

According to the rule of collateral estoppel or issue preclusion, when an issue of law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the same parties, whether on the same or a different claim. Restatement (Second) of Judgments § 27 (1982); *Clark v. Troutman, supra,* [509 Pa. 336], 502 A.2d [137] at 139. "Unlike merger and bar (*res judicata* ), which are applicable only when the same cause of action is asserted, collateral estoppel may apply in any subsequent litigation. On the other hand, collateral estoppel is applicable only to essential issues of fact which have been actually litigated." *In re Estate of R.L.L., supra* [487 Pa. 223], 409 A.2d [321] at 324–4 n. 8. *Accord: Schubach v. Silver,* 461 Pa. 366, 336 A.2d 328 (1975).

[A] plea of collateral estoppel is valid if, 1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the

conclude otherwise requires the Commonwealth to frustrate the policy prohibiting possession of such objects. *See One Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965).

plea is asserted was a party or in privity with a party to the prior adjudication, and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in the question of a prior action.

*In re Estate of R.L.L.*, *supra*, 487 Pa. at 228, 409 A.2d at 323–4 n. 8, *quoting Safeguard Mutual Insurance Company v. Williams*, *supra* [463 Pa. 567], 345 A.2d [664] at 668; *Gulentz v. Schanno Transportation, Inc.*, 355 Pa.Super. 302, 308, 513 A.2d 440, 443 (1986); *Derry Township School District v. Day & Zimmerman, Inc.*, 345 Pa.Super. 487, 491, 498 A.2d 928, 930 (1985); *Matson v. Housing Authority of the City of Pittsburgh*, 326 Pa.Super. 109, 112, 473 A.2d 632, 634 (1984).

*Zarnecki v. Shepegi*, 367 Pa.Super. 230, 238–40, 532 A.2d 873, 877–78 (1987) (*en banc*).

In *Commonwealth v. Lagana*, 510 Pa. 477, 509 A.2d 863 (1986), however, our Supreme Court carved an exception to this general rule. There, the Commonwealth had proceeded separately against the defendant, Lagana, on related charges of burglary and a firearm violation which stemmed from the same arrest. The burglary charge surfaced first. Arguing that police had unconstitutionally arrested him, Lagana successfully sought suppression of what later proved to be fruits of a burglary. The Commonwealth did not appeal this ruling. The firearms charge subsequently surfaced before a different trial court which, concluding that collateral estoppel precluded a re-litigation of the suppression issues previously disposed of during the first suppression proceedings, ruled that the fruits of the arrest relating to the firearms count must be suppressed as well.

On appeal to our Supreme Court, the Commonwealth argued that the trial court had erred in its application of the doctrine of collateral estoppel. In part, our Supreme Court agreed. Balancing the various competing policy interests involved the Court held:

In the present context we believe that some limited form of collateral estoppel is dictated, since it would have the beneficial effect of discouraging the relitigation of the same issues

based on the same evidence, while at the same time preventing judges of equal jurisdiction from entering diverse rulings on the same evidence. However, these benefits do not offset the potential negative impact of perpetuating an erroneous ruling.

The solution for this dilemma is to have the ruling of the first suppression hearing incorporated into the record of the second hearing, *and to allow review of the first decision on appeal as if it had been entered anew.*

Thus, in those instances where two prosecutions arise out of a single search and/or seizure, a decision by a suppression judge during the first prosecution can, upon the motion of the previous prevailing party, become part of the second prosecution. The party against whom this decision is being offered may offer any new evidence which was previously unavailable. Absent such new evidence the suppression judge in the second prosecution must adopt the findings and conclusions of the first judge, and incorporate them into the record. Thereupon, the party against whom the first *decision is offered may have the validity of the decision reviewed on appeal.*

*     *     *     *     *     *

In short, *while suppression judges must accept the rulings of their fellows upon the same facts, an appellate court should be permitted to determine whether the facts relied upon by both support the conclusion of the one, and the reliance by the other.* Since the ruling of one judge becomes the core of another judge's decision it is in the best interest of all concerned that the party against whom it is offered have the matter open for appellate review.

*Lagana, supra,* 510 Pa. at 483–485, 509 A.2d at 866–67 (emphasis added).

Instantly, the trial court and appellee on appeal have correctly recognized that the *Lagana* decision is controlling herein. However, in failing to apprehend the appropriate hierarchy of the courts involved, each has misapplied the *Lagana* decision to the instant facts. Specifically, each has proceeded from the premise that the Court of Common Pleas and the

Municipal Court stand on equal jurisdictional footing. As the Commonwealth points out, this is simply not true.

The Philadelphia Municipal Court is a court of limited jurisdiction with authority to adjudicate summary offenses and misdemeanors only. 42 Pa.C.S.A. § 1123(a)(1). The Philadelphia Court of Common Pleas, on the other hand, is a court of general jurisdiction deriving its authority to resolve all criminal matters arising under the Pennsylvania Crime Code from the Pennsylvania Constitution. Pa. Const. Art. 5, § 5.

Moreover, and more significantly, it is quite clear that the Philadelphia Court of Common Pleas enjoys appellate jurisdiction over orders entered by the Municipal Court. 42 Pa. C.S.A. § 932 provides that "[e]xcept as otherwise prescribed by any general rule adopted pursuant to section 503 (relating to reassignment of matters), each court of common pleas shall have exclusive jurisdiction of appeals from final orders of the minor judiciary established within the judicial district." That our legislature intended to confer to the Court of Common Pleas such appellate authority over the Municipal Court may be seen through review of the case law regarding the precursor to 42 Pa.C.S.A. § 932; 17 Pa.C.S.A. § 711.19, which provided that,

> Any party may appeal the judgment of the municipal court to the Common Pleas Court of Philadelphia within thirty days of the entry of judgment: provided, however, that appeals from summary convictions in municipal court shall be governed by the Minor Judiciary Court Appeals Act.

Applying this statute to a case in which the Commonwealth had brought an appeal directly to the Superior Court from an order entered by the Municipal Court, a unanimous Superior Court held explicitly that "[t]he proper procedure [where the Commonwealth sought review of a suppression order entered by the Municipal Court] would have been for the Commonwealth to have appealed this matter to the Common Pleas Court of Philadelphia County." *Commonwealth v. Hallowell,* 223 Pa.Super. 440, 441–42, 302 A.2d 377, 378 (1973). There is simply no material distinction between the controlling statute herein and its precursor. Each have the effect of conferring

upon the Court of Common Pleas appellate jurisdiction over the Municipal Court.

Applied to the facts before us, the significance of the error in failing to recognize the disparate stature of the relevant courts becomes evident. Here, the Municipal Court's suppression ruling is different than the first suppression ruling referred to in *Lagana.* Although each acts as an initial suppression ruling whose effect is to estop any subsequent court of *equal jurisdiction* from reaching diverse results *based on the same facts,* the crucial distinction between this case and *Lagana* is that the subsequent court asked to reach a diverse result herein is *not* of equal jurisdiction. The subsequent court here, the Court of Common Pleas, was, as *Lagana* expressly contemplated, asked to "review . . . the first decision [here, the Municipal Court's suppression ruling] as if it had been entered anew." 510 Pa. at 483, 509 A.2d at 866. Since the Court of Common Pleas is authorized to serve in an appellate capacity over the Municipal Court, it was perfectly appropriate for the Commonwealth to have the validity of the Municipal Court's decision reviewed by the Court of Common Pleas.[6]

## CONCLUSION

Accordingly, we conclude that the trial court erred in ruling as it did herein. The order of the trial court granting appellee's motion for return of property is, therefore, reversed, and the case is remanded to that court for a return of property hearing in accordance with Pa.R.Crim.P. 324.

---

**6.** This conclusion is not undermined by the rationale of *Commonwealth v. Harmon,* 469 Pa. 490, 366 A.2d 895 (1976), where our Supreme Court held that the defendant's constitutional right to a trial *de novo* in the Court of Common Pleas did not include a re-litigation of pre-trial motions to suppress conducted in the Philadelphia Municipal Court. In *Harmon,* the defendant invoked his constitutional right to appeal a conviction and sentence entered in the Philadelphia Municipal Court by way of a trial *de novo* in the Court of Common Pleas. In contrast, the petitioner in the instant case is not seeking to appeal an adverse ruling entered by the Municipal Court. On the contrary, petitioner, as the prevailing party, has initiated a proceeding in the Court of Common Pleas pursuant to Pa.R.Crim.P. 324 to recover property seized by the Commonwealth. As such, the instant facts do not implicate the *Harmon* rule.

Should the Commonwealth establish by a preponderance of the evidence that such property was linked to illegal bookmaking, it is subject to forfeiture. *See* 18 Pa.C.S.A. § 5513(b); *Commonwealth v. One Electronic Poker Game Mach.*, 302 Pa.Super. 350, 448 A.2d 1077 (1982); *Commonwealth v. McDermond*, 127 Pa.Cmwlth. 17, 560 A.2d 901 (1989); *In re $13,561.50*, 72 Pa.Cmwlth. 451, 456 A.2d 1140 (1983).

Reversed and Remanded for proceedings not inconsistent with this opinion. Jurisdiction relinquished.