**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Ricky GARCIA, Appellee.**

Superior Court of Pennsylvania.

Argued May 11, 1999.
Filed Feb. 2, 2000.

Hugh Burns, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Dennis J. Cogan, Philadelphia, for appellee.

Before FORD ELLIOTT, MONTEMURO * and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 The Commonwealth appeals the March 20, 1998 Order granting appellee's motion in limine to suppress all evidence to be offered by the Commonwealth on the basis of collateral estoppel.

¶ 2 The facts and procedure detailed by the trial court's Opinion are as follows.

Ricky Garcia was charged with selling crack cocaine on Ontario Street, a well-known drug street in Philadelphia. There were two pre-trial motions filed and hearings were held on both. The first was to protect a "confidential location" from which Officer Henry said he witnessed the defendant selling drugs on the street and then going to his "stash" in the back of a vacant lot at a spot near a chain link fence. The Motion to Suppress only went to the drugs found on Garcia when he was arrested. It did not apply to the drugs found in possession of the driver stopped a few blocks away (the person whom the officer said bought the drugs from Garcia); or the drugs found at the location of the stash in the vacant lot.

The Court found that the officer's testimony initially was that he made his observations in a building 50 feet from the corner, not from a garage across the street. However, an investigator for the defense went to the scene, and determined that it was impossible to see the location of the stash from that building. It was then that Officer Henry changed his testimony so that his confidential

* Retired Justice assigned to Superior Court.

location was not the building near the corner but a garage across the street from the vacant lot.

Because the Court found Officer Henry was not forthright, the Court chose to disbelieve all of the testimony of the officer and granted the motion to suppress the drugs found on the defendant and concluded that none of Officer Henry's testimony could be believed.

The initial testimony pointed conclusively to the building closer to the corner that had no view of the back of the vacant lot. That testimony did not fit for the garage across the street.

(Trial Court Opinion, 6/16/98 at 2–3, Klein, J.)

¶ 3 At the initial suppression hearing, only the drugs found on appellee were suppressed, while the stash and the drugs passed to a buyer were not. This is not a case where the same evidence as previously suppressed is to be admitted, but is a case which turns on the nexus of suppressed evidence to the admissibility of other evidence. At trial, the Commonwealth should be given the opportunity to establish that the evidence, supporting constructive possession by appellee of the stash and drugs transferred to a buyer, was clear of the taint of the testimony of the officer which was not believed and which resulted in the drugs found in appellee's hand being suppressed. Because the view of a transaction by Officer Henry was suppressed but the independently standing stash and possession by appellee were not suppressed, they were trial issues, and their suppression prior to commencement of the trial extends the doctrine of collateral estoppel beyond the very limited parameters of that concept. It is conceivable that at trial witnesses, claimed to be available to the Commonwealth, could establish that the evidence of the stash and constructive possession by appellee were independently and properly obtained.

¶ 4 Prior to commencement of the trial, the Commonwealth moved for recusal of the trial judge, offering evidence that Offi-

cer Mitchell saw the defendant sell drugs and that Detective Heeney saw defendant enter the vacant lot carrying the same bag of drugs, later recovered from the lot, and then return from the lot without the bag. (Commonwealth's Brief at 5.) While the trial judge, in previously suppressing drugs possessed by appellee, discredits this testimony based on the nexus between the discredited testimony of Officer Henry's surveillance as the basis for the backup officer's actions in seizing the drugs and arresting appellee and a buyer, it is conceivable that the Commonwealth can produce credible evidence of the discovery of the stash and transfer of drugs untainted by the discredited testimony of Officer Henry. If the Commonwealth fails to establish the independent admissibility of the evidence, it will result in the application of finality of findings by a judge of coordinate jurisdiction and dismissal of the charges. In view of the overwhelming evidence presented here, however, and the possibility that the testimony of the officers or additional evidence could present an independent basis for admission of the evidence relating to the stash and sale of the drugs, the case should be permitted to go forward.

¶ 5 This case must be approached from the point of view that collateral estoppel, a very limited concept as it applies to suppression motions, should apply only where the precise facts introduced as evidence could not be subsequently admitted to establish proof of the identical matter at a later time. The trial judge, when initially reviewing this issue pursuant to a motion to dismiss based on collateral estoppel, mentally walked through the motion making cogent observations which, if carried to their conclusion, would mitigate against applying collateral estoppel.

¶ 6 Prior to trial on March 2, 1998, the court was considering whether an oral motion or motion in limine would be more productive of resolution of this matter on appeal, rather than quashing the appeal based on the previous suppression Order

entered on December 9, 1998. The court first ruminated mentally as to whether the findings made at the earlier suppression hearings were matters of law or fact (Motion Hearing, 3/20/98, at 4). Thereafter, the court went on to consider whether the drugs sold on the street and taken to the stash initially were excludable as evidence under the collateral estoppel doctrine simply because the trial court did not find Officer Henry credible (*id.* at 5).

¶ 7 In the March 2, 1998, hearing, when appellee's motion to suppress was denied, at least preliminarily, the court conjectured:

[THE COURT]: Suppose the officer got his facts mixed up, he got called away and was looking somewhere else and didn't see anything. He might not have lied, just mixed it up with another case.

. . .

I said he was unworthy of belief, *not consciously lying*. He could have made a mistake. There are a lot of reasons.

MR. MINGES [COMMONWEALTH]: If the Court is supposing now that the officer made an honest mistake, why is the Court then practicing the notion of falcus [sic] in uno, falcus [sic] in omnibus?

THE COURT: Because you didn't call in any other witnesses. One of the facts that you had to establish to make your case was that there was the transaction, and you didn't make it.

. . . that the burden on the Commonwealth was to prove that Garcia sold

drugs on the street. If he didn't sell drugs on the street, you couldn't go catch the buyer then go back and arrest him. Okay? It was not only that the officer saw him do that, he had to do that. . . .

. . .

MR. MINGES: It was also agreed by counsel that the defendant did not own, nor did he have an interest in the drugs that were received in the lot. Thereafter, the decision that the Court made was to suppress the drugs that were received from the person of the defendant in this case. The drugs that were on the buyer and the drugs that were in the lot weren't suppressed; and, therefore, still remain as evidence for the Commonwealth to use at trial.

THE COURT: No question.

(N.T., 3/2/98 at 5–7; emphasis added.)

¶ 8 The heart of this case turns on the following exchange and a determination of what was legally permissible under the procedural and legal conduct of this case.[1]

THE COURT: Because the only way—what the Commonwealth had to establish to be able to arrest the defendant and search him was that he sold drugs to an unknown person on the street—not an unknown person—that he sold drugs to a guy in the car. They stopped the guy in the car and the guy in the car had drugs; and also, he went over to a stash in the back. These are all things to show that they had probable cause to arrest him.

And I find that I can believe that.

[T]here is an old maxim 'falsus in uno, falsus in omnibus' (false in one thing, false in all), which is often much overemphasized by counsel, though it is recognized by many courts in their charges to the jury. But this is only primitive psychology, and should be completely discarded.

John H. Wigmore, *A Students' Textbook of the Law of Evidence* 181 (1935).

---

1. At the hearing on March 20, 1997, the court stated: "I don't know whether he is mistaken or lying, I can't look into his head, but I don't believe what he said, but I was exercising what I told juries which is to take the opportunity to disbelieve all of the testimony of the officer, which is what I did." (N.T., 3/20/97, at 4.) The maxim here applied is falsus in uno, falsus in omnibus. In explaining this maxim, Black's Law Dictionary (7th ed.) refers to a note by Wigmore, the widely respected expert on evidence:

MR. MINGES: We have other witnesses that we intend to call to establish that.

THE COURT: I think you had to call them initially. You already had one bite of the apple. You didn't call those witnesses and you didn't establish what you had to establish.

MR. MINGES: The Commonwealth had one bite of the apple as to the drugs found on the person of the defendant. While the Court may have found that the Commonwealth did not have probable cause, based on the record, to arrest the defendant, the fact that the Court disbelieved that fact does not mean the Commonwealth can't bring in the drugs found on the person to the trial.

THE COURT: That's what the Appellate Court will tell us.

(N.T., 3/2/98, at 8.)

¶ 9 In addition to the above exchange, it is also significant that the lack of credibility assigned to the testimony of Officer Henry was not assessed to Officer Jones, who also testified extensively at the suppression hearing concerning the drug transaction. In that regard, the court stated it did not disbelieve Officer Jones.

MR. MINGES: But the point that— what I am saying is this. At this point in time the Court has heard a Motion to Suppress. The Court has decided a constitutional issue based on the testimony of two witnesses. The Court chose not to accept the testimony—

THE COURT: The two witnesses being?

MR. MINGES: Officer Jones and Officer Henry.

THE COURT: Jones just made the arrest.

MR. MINGES: And he received drugs from the hands of the defendant.

THE COURT: Yes, that is what is suppressed. *I am not saying I didn't believe Officer Jones.*

MR. MINGES: So what the Commonwealth is saying and the Common-

wealth's position here is consistent with the case law. The question as to additional witnesses. There is other evidence in this case that was not suppressed. A constitutional issue has been decided. That is whether or not the drugs received from the defendant's hands were received in a constitutionally permissible fashion. The Court said they weren't. Now the Commonwealth has other evidence that it seeks to use against the defendant and in essence there is nothing that says the Commonwealth shouldn't be allowed to do that. The Court is saying—the Court, in essence, is saying that because you heard a Motion to Suppress involving one witness there can't be a trial using other evidence and other witnesses. The Court is saying—

THE COURT: Dealing with an issue that was—dealing with a fact that was decided adversely for the Commonwealth in the first hearing; that's what I am saying. . . .

(N.T., 3/20/97, at 12–13; emphasis added.)

¶ 10 We agree with the Commonwealth that this is a trial issue and should not be barred by the grant of the motion in limine, denying production of the witnesses on the basis of collateral estoppel. We also agree with the Commonwealth that *Commonwealth v. Lagana,* 510 Pa. 477, 509 A.2d 863 (1986), does not apply. *Lagana* held that the findings of the original suppression court may not be ignored if they bear cogently on the admissibility of specific evidence at trial. It also held if the Commonwealth can establish through new or independent facts the validity of the seizure, then the evidence may not be suppressed by collateral attack. We do not believe *Lagana* prevents the litigation of the issue of the stash and possession by appellee in this case because the suppression court did not believe one officer's testimony regarding his ability to observe appellee's activity. The evidence may or may not prevail at trial but it was error to deny the Commonwealth an opportunity to

present it to establish a *prima facie* case of constructive possession and sale on the basis of the alleged facts, independent of those suppressed.

¶ 11 In initially denying a motion to suppress the stash and the drugs sold, the court limited the scope of the suppression and clearly permitted the Commonwealth to go forward with properly pleaded charges against appellee as to the matters not suppressed. The revisiting of the suppression issue by means of the collateral estoppel doctrine appears to be an unwarranted extension of that finding, which unreasonably precluded the Commonwealth from presenting other evidence and witnesses at trial who might substantiate the charges.

¶ 12 Collateral estoppel is embodied in the Fifth Amendment, pursuant to the holding in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In *Ashe*, at least three men robbed six poker players. The defendant was tried, and subsequently acquitted, in a state court for armed robbery of one of the poker players. Because the jury in the first trial had determined by its verdict that the defendant was not one of the robbers, the court reversed the robbery conviction obtained in the second trial, involving a second poker player, applying the doctrine of collateral estoppel. The court found that the ultimate fact of the identity of the robber had been determined in the first trial and was not subject to review in trials related to any of the other five victims. Here, the ultimate fact was never determined to finality at trial and is still capable of proof using non suppressed evidence at trial.

¶ 13 Pennsylvania courts have adopted a three-step approach in application of the doctrine of collateral estoppel: 1) while the offenses charged in the two offenses need not be the same, the issues must be similar and material; 2) collateral estoppel only bars redetermination of those issues necessarily determined and

litigated between the parties in the first proceeding; and 3) collateral estoppel requires a final judgment in the first proceeding. *Commonwealth v. Hude*, 492 Pa. 600, 610–12, 425 A.2d 313, 319 (1980).

¶ 14 In *Lagana, supra,* in which two suppression hearings resulted from two separate offenses charged arising from a single stop and arrest, the Supreme Court held that jeopardy did not attach from the first suppression of evidence as to a burglary. The court found there was no constitutional bar to relitigating a suppression motion during the course of a second prosecution. *Lagana* also recognized the doctrine of coordinate jurisdiction, which would balance any unfairness of a second procedure while assuring that an erroneous earlier decision could be corrected by availability of additional or new evidence. In this case, there was no finality of judgment as to the issue previously litigated, as in *Lagana*, and the issue of collateral estoppel remains to be litigated once the second trial commences.

¶ 15 Because the Commonwealth did not appeal the suppression of the physical possession by appellee, undoubtedly believing the case against him was not totally impaired, denying the Commonwealth the right to go forward with the remainder of the case, on the basis of whatever evidence the Commonwealth believes it possesses, appears to be unfair and unwarranted. *Lagana* does not prevent this, as it placed a high premium on permitting evidence to be admitted which was denied due to an erroneous finding. We find the Commonwealth should be permitted to go forward with the case, embodying such evidence it had not previously presented. It is not inconceivable that the testimony presented by the other officers involved in this case may establish without question, that despite doubts created by Officer Henry, who was protecting a confidential surveillance location, the information received from him and their independent observations and confiscation of contraband were justifiable and not subject to collateral es-

toppel or the order of a coordinate jurisdiction.

¶ 16 The case is remanded for trial. The Commonwealth may proceed to call additional witnesses, who are not precluded from presenting evidence which falls outside the ambit of the original suppression Order.[2]

¶ 17 Jurisdiction relinquished.

¶ 18 Dissenting Opinion by FORD ELLIOTT, J.

FORD ELLIOTT, J., Dissenting:

¶ 1 I must respectfully dissent. While I agree with much of the majority's analysis as to the implications of a suppression ruling generally, I must disagree that this analysis applies under the specific facts of this case. My reasons follow.

¶ 2 Whether viewed as an issue of collateral estoppel or coordinate jurisdiction, I agree with the trial court that the only evidence available to the Commonwealth to connect appellee to the unsuppressed drugs is inextricably intertwined with Officer Henry's tainted testimony that he watched appellee sell and stash the drugs from an impossible location. *See Commonwealth v. Harper*, 416 Pa.Super. 608, 613, 611 A.2d 1211, 1213 n. 1 (1992) (this court "may affirm the decision of the trial court if there is any basis on the record to support the trial court's action. This is so even if we rely upon a different basis in our decision to affirm[ ]") (citations omitted).

¶ 3 The majority posits, however, that because this not a case in which the same evidence that was previously suppressed is to be admitted, but is instead a case that turns on the nexus of the suppressed evidence to the admissibility of other evidence, the Commonwealth should be given an opportunity to establish that the evidence connecting appellee to the unsuppressed drugs was not tainted by Officer Henry's testimony. (Majority opinion at 633 – 34.) I do not agree.

¶ 4 The trial court found as a fact during the suppression hearing that appellee neither sold drugs to a passenger in the van nor stashed drugs in the vacant lot because Officer Henry's tainted testimony was the only direct evidence the Commonwealth presented that he did. (R.R. at 118a, 138a–139a.) As a result, the court found that the police lacked probable cause to believe criminal activity was afoot to support appellee's arrest, and therefore suppressed the drugs found on appellee, the only drugs in which appellee had a privacy interest.[3] (Trial court opinion, 6/16/98 at 3.) As the court noted, "I can't believe anything [Officer Henry] says, and I don't; and therefore, there is no credible testimony that justifies the arrest and the search. . . ." (Notes of testimony, suppression hearing, 12/9/97[4] at 101.) Assistant District Attorney John Minges then asked the court, "The Court has granted the motion to suppress, saying there is no probable cause to arrest the defendant?" (*Id.* at 103.) The court responded, "I also found that the officer is unbelievable." (*Id.*) The Commonwealth did not appeal the suppression court's order.

¶ 5 It is true that Officer Willie Jones, who was one of the officers who stopped the van and arrested its passenger and also arrested appellee, also testified at the suppression hearing. It was clear, however, from Officer Jones' testimony that all of his actions and observations were predicated on information he received from Offi-

---

**2.** The Commonwealth's petition to correct an omission in the record is granted; the appellant's petition for leave to file post-submission supplemental brief is denied as moot.

**3.** Appellee conceded he had no expectation of privacy in the drugs in the van or the vacant lot. (R.R. at 143a–144a.)

**4.** Citations to notes of testimony from the suppression hearing are citations to a volume of testimony dated December 9, 1997 and filed in this court on November 23, 1998.

cer Henry. (*See, e.g., id.* at 7–8, 28.) Regardless of Officer Jones' credibility, therefore, I do not agree with the majority that the Commonwealth may now call Officer Jones to testify at trial.

¶ 6 Nor do I believe that the Commonwealth may call two additional officers, Officers Brad Mitchell and Daniel Heeney, to testify at trial in place of Officer Henry. When the Commonwealth proffered the testimony of these two witnesses in response to the motion *in limine,* the trial court rejected this proffer because these officers, who recovered the stashed drugs, stopped and searched the van, and arrested its passenger and appellee, had, like Officer Jones, acted solely on information received from Officer Henry. *See* R. at , Investigation Report Form 75–49 ("At approximately 5:40pm, P/O Daniel Heeney ... working with P/O Willie Jones ... stopped above blue Ford van"; "At approximately 5:45pm, P/O Willie Jones ... working with P/O Daniel Heeney ... were directed to the 400 block of W. Ontario Street by P/O Henery [sic]"; "At approximately 5:55pm, P/O Brad Mitchell left surveillance which he was conducting with P/O Aubrey Henery [sic] ... at which time P/O Henery [sic] directed P/O Mitchell to above cyclone fence and removed from underneath a piece of wood above large clear baggie which P/O Henery [sic] observed deft Garcia place underneath...."). *See also* notes of testimony, suppression hearing, 12/9/97 at 106–110. Thus, these officers' testimony, like the testimony of Officer Jones, would bear the taint of Officer Henry's testimony.[5]

¶ 7 The Commonwealth argues, however, that possession of the drugs found in the van and vacant lot, an element of the crimes with which appellee is charged,[6]

was not at issue at the suppression hearing. I agree that possession of those drugs was not at issue; however, the facts underlying possession were very much at issue. Thus, the essential issue *of fact* underlying constructive possession, *i.e.,* whether appellee sold or stashed the drugs, was at issue at the suppression hearing. *Commonwealth v. Anthony,* 418 Pa.Super. 82, 87–89, 613 A.2d 581, 584 (1992).

¶ 8 Furthermore, Officer Henry's testimony was, and at trial can be, *the only* evidence linking appellee to the aforementioned drugs because all of the other officers who filed reports or testified in this case indicated that they acted on information received from Officer Henry. *See* discussion *supra.* Because the suppression court found Officer Henry's testimony incredible, the Commonwealth cannot establish a *prima facie* case that appellee possessed those drugs, much less sustain its burden of proof of possession beyond a reasonable doubt. *See Commonwealth v. Rogers,* 416 Pa.Super. 59, 62–64, 610 A.2d 970, 972 (1992) (in order to establish a *prima facie* case, the Commonwealth must show that a crime has been committed and that the accused is probably the one who committed it) (citation omitted). *See also Commonwealth v. Haskins,* 450 Pa.Super. 540, 543–45, 677 A.2d 328, 330 (1996) ("When contraband is not found on the defendant's person, the Commonwealth must establish 'constructive possession,' that is, the power to control the contraband and the intent to exercise that control[ ]"), *appeal denied,* 547 Pa. 751, 692 A.2d 563 (1997), citing *Commonwealth v. Valette,* 531 Pa. 384, 613 A.2d 548 (1992).

---

5. In its letter brief in support of its motion for recusal, the Commonwealth asserted it would call Brad Mitchell at trial, who would testify that he observed the drug sale and also observed appellee walk into the vacant lot. (R.R. at 145a.) The investigation reports the police officers filed do not appear to support this claim. Additionally, Officer Mitchell was available to testify at the suppression hearing but the Commonwealth did not call him because he could add nothing. (Notes of testimony, suppression hearing, 12/9/97 at 50.)

6. Appellee was charged with possession, possession with intent to deliver, and delivery of a controlled substance.

¶ 9 The majority agrees with the Commonwealth, however, that *Commonwealth v. Lagana*, 510 Pa. 477, 509 A.2d 863 (1986), relied upon by the trial court, is inapposite. While I, too, agree that *Lagana* is factually and procedurally distinguishable, I find the court's discussion in *Lagana* instructive. In that case, the police responded to a radio call indicating that a man with a gun was standing on a street corner in Philadelphia. When a police officer arrived at the corner, he observed Lagana standing in the rain looking into a sandwich shop with binoculars. Following a pat-down that revealed a gun, the officer arrested Lagana. Prior to arresting him, however, the officer noticed two nearby carrying cases. When Lagana responded hesitantly to the officer's questions regarding the cases, the officer seized the cases, which contained the fruits of a burglary.

¶ 10 Lagana was charged separately with a firearms violation and with burglary, and the cases proceeded separately through the system, the Commonwealth not having consolidated them. As a result, defense counsel filed separate motions to suppress. At the suppression hearing on the burglary matter, the court suppressed the burglary evidence, finding that the police lacked probable cause to arrest Lagana because there was no evidence regarding the reliability of the police radio information that led to the arrest. Rather than appealing the decision, the Commonwealth *nolle prossed* the burglary charge. *Id.* at 479–81, 509 A.2d at 864.

¶ 11 At a suppression hearing on the firearms matter, the suppression court, who was not the same judge who presided over the burglary suppression, ruled that by operation of collateral estoppel, the burglary suppression court's findings of fact and conclusions of law were binding. As a result, without taking evidence, the firearms court suppressed the gun. *Id.*

While this court affirmed the trial court, our supreme court found appropriate a limited form of collateral estoppel, in which the ruling of the first suppression court would be incorporated into the record of the second hearing, thereby allowing review of the first decision on appeal in the second proceedings. *Id.* at 866.

¶ 12 The Commonwealth argues, however, that this case is distinguishable from *Lagana* because the issues before a suppression court are not the same as the issues at trial. I agree with the Commonwealth that a suppression court's ruling as to probable cause does not usually implicate the Commonwealth's ability to go forward with its case beyond precluding the Commonwealth from introducing the suppressed evidence: it is free to go forward as to any other, non-suppressed evidence. Nevertheless, as I noted *supra*, this is an unusual case. Variations on the facts of *Lagana* will explain.

¶ 13 As already noted, Lagana was charged separately with the firearms and burglary violations. Even if these charges had been consolidated, however, and defense counsel had moved to suppress only the contents of the carrying cases but not the gun on the basis of the unreliable radio report, I envision the following possible scenarios. In the first scenario, the officer arrived at the corner and saw Lagana standing there with the gun. The Commonwealth could then proceed on the firearms violation because independent credible evidence, *i.e.*, the officer's observation of Lagana holding the gun on a public street, would establish a *prima facie* case of a firearms violation.[7]

¶ 14 If, on the other hand, the radio report indicated that Lagana had thrown the gun into nearby bushes, and, on arriving, the police officer found the gun in the bushes, only the unreliable radio report could establish a connection between Lagana and the gun. The Commonwealth

---

7. While the gun may have otherwise been suppressible as the fruit of the poisonous tree, it would be admissible because defense counsel did not move to suppress it.

would therefore be unable to establish a *prima facie* case that Lagana constructively possessed the gun and would be unable to proceed on the firearms violation. This is our case.

¶ 15 Nevertheless, the Commonwealth also argues that the suppression court's order was not a final judgment for purposes of collateral estoppel. (Commonwealth brief at 11.) Our supreme court held in *Lagana, supra,* however, that collateral estoppel should apply to pre-trial suppression rulings where separate prosecutions arise from a single arrest. *Id.* at 479–81, 509 A.2d at 864. Noting that collateral estoppel applies in criminal prosecutions where double jeopardy concerns are implicated, the *Lagana* court held that it also applies to avoid "having judges of equal jurisdiction, sitting on the same bench, overruling each other on the same record." *Id.* at 483, 509 A.2d at 866. If the coordinate jurisdiction rule is sound public policy where there are two separate prosecutions as in *Lagana*, it is even more sound where the rulings will be part of the same case.

¶ 16 It is well recognized that " 'judges of coordinate jurisdiction sitting in the same court and in the same case should not overrule the decisions of each other.' " *Boyle v. Steiman,* 429 Pa.Super. 1, 12, 631 A.2d 1025, 1031 (1993), *appeal denied,* 538 Pa. 663, 649 A.2d 666 (1994), quoting *Golden v. Dion & Rosenau,* 410 Pa.Super. 506, 509–11, 600 A.2d 568, 570 (1991) (other citations omitted). As the *Boyle* court noted, however, "[A]n exception exists where new evidence is placed **on the record** in the interim between the first trial court judge's ruling and the second trial court judge's reassessment." *Boyle,* 631 A.2d at 1031 (citations omitted) (emphasis added). As the court in *Boyle* continued, "Where the record is materially different from the record that was before the preceding judge, it is not improper for the succeeding judge to reach a different result." *Id.* (citations omitted).

¶ 17 Perhaps on other facts, I could agree with the majority that "it is conceivable that the Commonwealth can produce credible evidence of the discovery of the stash and transfer of drugs untainted by the discredited testimony of Officer Henry." (Majority opinion at 634.) In reality, however, the Commonwealth's proffer of new evidence in the form of the testimony of Officers Brad Mitchell and Dennis Heeney is tainted by its dependence on information received from Officer Henry, as is the testimony of Officer Jones. *See, e.g.,* notes of testimony, preliminary hearing, 3/21/97 at 19–21 (Officer Jones testified that at the direction of Officer Henry, he and Officer Heeney stopped the van and arrested its passenger, and then arrested appellee; Officer Jones testified that Officer Henry then directed Officers Jones and Mitchell to the vacant lot). Thus, while it is always conceivable that the Commonwealth may be able to unearth untainted new evidence, the Commonwealth had not **placed on the record** new, untainted evidence when the trial court granted the motion *in limine*, and has not met that burden on appeal. *Boyle,* 631 A.2d at 1031.

¶ 18 Finally, I would reject the Commonwealth's arguments, sounding in logic, to the effect that under the suppression court's analysis, if the suppression court does not believe a witness who claims to have seen the Titanic sink, then the Titanic did not sink. (Commonwealth brief at 7.) [8] I find the suppression court's reasoning to be that if the Commonwealth can produce only one witness who claims to have seen the Titanic sink, but the defense proves that the witness was in Antarctica at the time he claimed to have witnessed the sinking, then *without any other evidence*, the Commonwealth has failed to meet its burden of proving that the Titanic sank.

---

**8.** The Commonwealth employs numerous examples of the suppression court's allegedly fallacious logic. I address only one.

In a criminal case, the Commonwealth must prove that a defendant committed a crime beyond a reasonable doubt. In this case, the Commonwealth could not even meet its burden of establishing that appellee was probably committing a crime, and had no additional, untainted evidence to offer. I find no flaw in the court's logic.

¶ 19 For all of the foregoing reasons, I must respectfully dissent.