**COMMONWEALTH of Pennsylvania**

v.

**William JACKSON, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 20, 2012.

Decided Aug. 16, 2012.

William Jackson, pro se.

Jonathan M. Levy, Assistant District Attorney, Philadelphia, for appellee.

BEFORE: LEADBETTER, Judge, and COHN JUBELIRER, Judge and COVEY, Judge.

OPINION BY Judge COVEY.

William Jackson (Jackson) appeals pro se from the Philadelphia County Court of Common Pleas' (trial court) June 9, 2011 order directing that $8,603.00 in United States (U.S.) currency be forfeited to the Commonwealth of Pennsylvania (Commonwealth) pursuant to the Controlled Substances Forfeitures Act (Forfeiture Act).[1]

1. 42 Pa.C.S. §§ 6801–6802.

The issues before this Court are: (1) whether the trial court violated Jackson's rights by ordering forfeiture of Jackson's property after he was acquitted of the drug possession charges; (2) whether the trial court erred by denying Jackson the opportunity to be present at the forfeiture hearing; (3) whether the trial court erred by ordering forfeiture of property obtained by illegal search and seizure; and, (4) whether forfeiture was against the weight of the credible evidence. We vacate and remand.

On June 28, 2009, at approximately 8:15 p.m., Philadelphia police officers stopped Jackson for failing to stop his vehicle at a red light. Jackson's passenger, who was in possession of marijuana, was arrested and placed in the patrol car. Because Jackson could not produce his driver's license or the vehicle's registration, the officers declared a live stop,[2] and asked Jackson to step out of the car while it was inventoried. The officer noticed bulges in Jackson's cargo pants, which Jackson advised was approximately $8,500.00 in cash. The officer removed $8,603.00 from Jackson's pocket. Jackson was handcuffed and placed into the cruiser with the passenger. After Jackson and the passenger began arguing and Jackson was observed wiggling around, the passenger was removed from the cruiser. When the officers later removed Jackson from the cruiser, they observed 93 packets of heroin, crack cocaine and marijuana where he had been sitting. Jackson was charged with possession of a controlled substance with intent to deliver. After a preliminary hearing, Jackson was held for trial. According to the parties' briefs, a trial was held on July 22, 2010, and Jackson was found not guilty.

Jackson subsequently filed a return of property motion, and the Commonwealth filed a petition for forfeiture of the money. By July 7, 2009 letter to Jackson's home at 6229 West Jefferson Street, Philadelphia, the Commonwealth notified Jackson that the Commonwealth filed the forfeiture petition, and he had the right to respond. The letter also stated that a hearing was to be held on August 27, 2009, and that he must appear or risk forfeiture of his property. According to the Commonwealth's brief, Jackson "responded to the Commonwealth's forfeiture petition by filing a counseled Answer dated September 24, 2009, and *pro se* answers to the Commonwealth's interrogatories dated October 4, 2010...." [3] Commonwealth Br. at 20. After several continuances, a forfeiture hearing was held on June 9, 2011.[4] Jackson, who was then incarcerated for an unrelated offense, did not attend the hearing. His grandmother, Lillie Jackson, appeared at the hearing. Following the hearing, the trial court ordered forfeiture of Jackson's money. Jackson appealed to this Court.[5]

---

2. Pursuant to Section 6309.2(a) of the Vehicle Code, 75 Pa.C.S. § 6309.2(a), when a police officer verifies that a person is operating a vehicle without a valid driver's license or registration, he must immobilize the vehicle, have it towed and stored, and notify the appropriate judicial authority.

3. The interrogatories and Jackson's answers thereto are not contained in the record.

4. According to the trial court's docket, the hearing was rescheduled for October 8, 2009, then January 14, 2010, then June 30, 2010, then July 14, 2010, then September 22, 2010, then November 3, 2010, then November 23, 2010, then February 3, 2011, then for two different times on March 17, 2011, then for June 9, 2011.

5. Jackson's appeal was originally filed in the Superior Court. On April 23, 2012, it was transferred to this Court. "Our review of a forfeiture appeal is limited to determining whether the trial court's findings of fact are supported by substantial evidence and whether it abused its discretion or committed an

■ "The goal of the Forfeiture Act is to eliminate economic incentives of drug-related activity and thereby deter such activity." *Commonwealth v. Heater*, 899 A.2d 1126, 1132 (Pa.Super.2006). Accordingly, Section 6801(a)(6)(i) of the Forfeiture Act provides, in pertinent part, that the following are subject to forfeiture:

(A) Money ... furnished or intended to be furnished by any person in. exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act[6] (the Controlled Substance Act)], and all proceeds traceable to such an exchange.

(B) Money ... used or intended to be used to facilitate any violation of [the Controlled Substance Act].

42 Pa.C.S. § 6801(a)(6)(i)(A), (B).

The Pennsylvania Supreme Court has stated:

To meet its burden, the Commonwealth must establish, by a preponderance of the evidence, that a nexus exists between the money and a violation of the Controlled Substance Act. A preponderance of the evidence is tantamount to a 'more likely than not' standard. Moreover, the Commonwealth need not produce evidence directly linking seized property to illegal activity in order to establish the requisite nexus between seized property and unlawful activity. Although illegal drugs are often present at the time of seizure, there is no requirement that such drugs be present; instead, circumstantial evidence may suffice to establish a party's involvement in drug activity. Furthermore, for property to be deemed forfeitable, neither a criminal prosecution nor a conviction is required.

*Commonwealth v. $6,425.00 Seized From Esquilin*, 583 Pa. 544, 555–56, 880 A.2d 523, 529–30 (2005) (footnote and citations omitted). Section 6801(a)(6)(ii) of the Forfeiture Act, specifically provides, however, that "money ... found in close proximity to controlled substances possessed in violation of [the Controlled Substance Act] shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance in violation of [the Controlled Substance Act]." 42 Pa.C.S. § 6801(a)(6)(ii).

■ Jackson first argues that the trial court violated Jackson's rights by ordering forfeiture of Jackson's property after he was acquitted of criminal charges for the possession of illegal drugs found after the police stopped him for running a red light. We disagree. This Court has held:

Civil forfeitures are the *in rem* consequence for wrongdoing prescribed by statute. Property is forfeited not as a result of the criminal conviction, but through a separate proceeding, civil in form but quasi-criminal in nature, in which the agency seeking the property must show, by a preponderance of the evidence, a nexus between the property sought and the possessor's illegal activity.

Of primary importance here, '[i]t is not necessary, therefore, that a forfeiture be supported by an underlying criminal conviction.'

*Commonwealth v. 542 Ontario St.*, 989 A.2d 411, 417 (Pa.Cmwlth.2010) (citations omitted). "Regardless of whether a conviction can be gained from the evidence, the Commonwealth may seek to forfeit property as long as it establishes that the property constitutes contraband." *Commonwealth v. Anthony*, 418 Pa.Super. 82,

---

error of law." *Commonwealth v. 5444 Spruce St.*, 890 A.2d 35, 38 (Pa.Cmwlth.2006).

6. Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780–101–780–144.

613 A.2d 581, 583–84 (1992). Thus, the fact that Jackson was acquitted of the underlying criminal charges does not preclude the trial court from ordering forfeiture of Jackson's money.

 Jackson next argues that the trial court erred by denying him the opportunity to be present at the forfeiture hearing. We agree. Here, Jackson contested the Commonwealth's forfeiture in his answer to the petition for forfeiture. The only notice of the forfeiture hearing in the record specified that Jackson had to appear for the August 27, 2009 hearing. The hearing was continued approximately 10 times, then took place nearly two years later. At the time of the June 9, 2011 hearing, Jackson was incarcerated.

██ ██ "[N]otice and an opportunity to be heard are integral to forfeiture proceedings." *Commonwealth v. 1997 Mitsubishi Diamante*, 950 A.2d 1114, 1116 (Pa. Cmwlth.2008). Where the owner of property subject to forfeiture is incarcerated, and a hearing is scheduled, *"notice of the hearing* must contain additional information regarding steps which could be taken in order to secure the appellant's attendance at the hearing." *Commonwealth v. $1,800 U.S. Currency*, 679 A.2d 275, 277 (Pa.Cmwlth.1996).

According to his brief, Jackson "never received such notice." Jackson Br. at 13. "Jackson wanted to attend the [h]earing, and sent his [g]randmother to the [c]ourtroom so he would have some type of representation in [c]ourt when it became evident that the Commonwealth was not going to afford him the opportunity to be present and heard." Jackson Br. at 13. In addition, according to the trial court's opinion,

Jackson's Pa.R.A.P. 1925(b) Statement "says 'Defendant is incarcerated and never received notice informing him that proper steps would be taken to aid such person in appearing and defending as he wished to do.' " [7] Trial Ct. Op. at 5.

There is no record evidence that once Jackson was incarcerated [8] the Commonwealth properly notified him of the June 9, 2011 hearing, that he waived his right to attend, or that arrangements could not be made to insure his attendance at the hearing. Citing *Commonwealth v. Smith*, 562 Pa. 609, 757 A.2d 354 (2000) and *Commonwealth v. Mosley*, 549 Pa. 627, 702 A.2d 857 (1997), the Commonwealth implies that Jackson's opportunity to answer the forfeiture petition and interrogatories was sufficient to satisfy the requirement that he be heard. We find this argument disingenuous. Those cases do not reflect that written responses are sufficient to replace an in-person hearing. In fact, in *Mosley*, the property owner was given the option of answering interrogatories in lieu of appearing at a hearing on his motion for return of property. The Supreme Court held that by declining to attend a hearing on his petition for return of property, he did not also agree to have a forfeiture hearing take place in his absence. *Mosley*. If the Commonwealth's interpretation was correct, there would be no need to hold forfeiture hearings at which only the Commonwealth may introduce evidence.

The Commonwealth's argument that Jackson was represented by counsel, and that it is required only to notify pro se incarcerated property owners of how to appear at the hearing is likewise without merit since, in its brief, the Commonwealth

7. Although the trial court's July 5, 2011 order directing Jackson to file a Pa.R.A.P. 1925(b) Statement is included in the certified record, *Jackson's Pa.R.A.P. 1925(b) Statement is not* included in the certified record.

8. Jackson's incarceration in a state correctional facility would have been information available to the Commonwealth.

admits it was aware as early as October 2010, 8 months *before* the forfeiture hearing, that Jackson was acting pro se. *See* Commonwealth Br. at 20.

Finally, the Commonwealth's argument that Jackson plainly had notice of the forfeiture hearing because he sent his grandmother to the hearing also lacks merit. That he asked his grandmother to attend only evidences that he became aware of the date and time of the hearing, but nothing more.

> To require nothing more than a bare notice of the time and place of hearing is to settle for what in many cases may be a meaningless formality. Unless the incarcerated owner is made aware that arrangements can and will be made for him to be present at the hearing, a bare notice of the time and place of hearing will be of little value.

*In Re: Commonwealth, $803 Cash,* 403 Pa.Super. 526, 589 A.2d 735, 736 (1991) (*$803 Cash* ). Moreover, despite the Commonwealth's representation that Ms. Jackson "purported to have power of attorney to represent [Jackson] at the trial," the forfeiture hearing transcript reflects only that the trial court and the Commonwealth said she had power of attorney for Jackson. *See* N.T. at 3, 9. That Jackson's grandmother appeared at the forfeiture hearing on his behalf does not remedy that Jackson was to have had the opportunity to appear and defend himself but may not have been afforded the opportunity to do so.

The trial court concluded that Jackson's claim of being denied the opportunity to attend the hearing "must fail due to a lack of evidence. At the forfeiture hearing, he failed both to present any evidence supporting this claim and, more importantly, to make this claim at all." Trial Ct. Op. at 5. Contrary to the trial court's holding, we find that if Jackson was not properly notified of his right to arrange his attendance at the forfeiture hearing, his failure to appear and present evidence on this issue, supports his claim of error. Jackson raised the issue at his first opportunity on appeal.

Incarcerated property owners are "entitled to a real opportunity, not merely an illusory one, to attend the forfeiture hearing and defend against the Commonwealth's attempt to forfeit property removed from his person." *$803 Cash,* 589 A.2d at 737. Under circumstances in which the record is inadequate to show that the incarcerated property owner knew his rights and voluntarily surrendered them, Pennsylvania courts have remanded for additional hearings. *Mosley; $803 Cash.* We think that similar action is necessary here, so that the trial court can determine whether Jackson was properly notified of his right to attend the hearing and, if he did not waive such right, whether he had the opportunity to obtain documents to support his claims, and attend a hearing at which he can contest the Commonwealth's independent, unsuppressed evidence, challenge inferences to be drawn therefrom, and to demonstrate lawful acquisition and innocent possession of the $8,603.00.

■ Jackson next argues that the trial court erred by basing forfeiture of his money on evidence obtained as a result of an illegal search and seizure. We agree. Section 6801(b)(4) of the Forfeiture Act, 42 Pa.C.S. § 6801(b)(4), specifically authorizes the seizure of property subject to forfeiture without process under circumstances in which "there is probable cause to believe that the property has been used or is intended to be used in violation of The Controlled Substance ... Act." However, this Court has held:

> It is well settled that the Commonwealth may not permanently acquire derivative

contraband which it has initially seized unconstitutionally. Because of the underlying penal purpose of the forfeiture proceedings, the United States Supreme Court had long ago determined that the remedy for violations of the Fourth Amendment, the exclusionary rule, extends to forfeiture proceedings. *Commonwealth v. McJett*, 811 A.2d 104, 108 n. 5 (Pa.Cmwlth.2002) (citations omitted). Thus, "[o]nly where the government has independent, unsuppressed evidence that the res is contraband is it entitled to proceed on the merits in a forfeiture case." *Commonwealth v. $26,556.00 Seized From Polidoro*, 672 A.2d 389, 392 (Pa.Cmwlth. 1996).

█ Jackson specifically argues that "the critical issues adversely decided against the Commonwealth by this [a]cquittal was that Mr. Jackson was illegally searched and his property was illegally seized." Jackson Br. at 7. He also argues that "the police officers, whose testimony was deemed inconsistent and unreliable by Judge Linda Carpenter at the criminal trial, detained Mr. Jackson and obtained his property through unconstitutional conduct." Jackson Br. at 8. The trial court opined and the Commonwealth argues, that since Jackson did not raise this issue of evidence suppression at the forfeiture hearing, he has waived it. However, Jackson did not have the opportunity to raise the issue at his forfeiture hearing since, from the record evidence, it appears that his due process rights were violated and he was not given the opportunity to be present at the hearing.

If evidence of Jackson's underlying criminal conduct was suppressed and that resulted in Jackson's acquittal, the constitutionality of the seizure should have been considered by the trial court when deciding forfeiture. Accordingly, we vacate the trial court's forfeiture order and remand for the trial court to determine whether evidence it used to support forfeiture of Jackson's money was, indeed, suppressed on the basis of an unlawful search and seizure, and whether there is independent, unsuppressed evidence that the money is contraband that would support forfeiture.[9]

Jackson finally argues that forfeiture in this case was against the weight of the credible evidence. Without knowing whether there was unsuppressed evidence to support the trial court's forfeiture, we cannot determine whether forfeiture was against the weight of the credible evidence.

Based upon the foregoing, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

9. According to the record Jackson filed an application for notes of testimony, transmitted to the trial court by the Superior Court, seeking "Pre-liminary notes of testimony for CP–51–CR0009523–2009" and "Trial transcripts and notes of testimony for CP–51–0009523–2009." The application specifically reflects: "This forfeiture case (CP# –51–MD–0008744) stems from the criminal case (CP# –51–CR–0009523–2009). In Judge Palumbo['s] opinion he states facts and sentences from the notes of testimony from the criminal case. I believe these facts are incorrect and I do not have the notes to prepare my brief properly." Certified Record, App for Notes of Testimony filed October 11, 2011. In response to the Superior Court's order, the trial court transmitted: (1) Preliminary Hearing Volume 1, July 17, 2009 (relating to the June 28, 2009); (2) Sentencing Volume I, January 7, 2011 (related to CP–51–CR–0000976–08—Jackson's unrelated sentencing for robbery and conspiracy); and, (3) Hearing Volume 1, June 9, 2011 (forfeiture hearing). *Despite Jackson's request, the criminal trial transcript for CP# –51–CR–0009523–2009 was not transmitted by the trial court.* Thus, we cannot determine from this record whether suppression occurred. The Commonwealth, however, states in its brief that the trial judge "granted in part/denied in part his suppression motion." Commonwealth Br. at 13.

## ORDER

AND NOW, this 16th day of August, 2012, the Philadelphia County Court of Common Pleas' June 9, 2011 order is vacated, and the matter is remanded for further proceedings consistent with this opinion.

Jurisdiction is relinquished.