J-S62004-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARCOS J. TAVAREZ, | |
| Appellant | No. 1432 EDA 2013 |

Appeal from the Judgment of Sentence entered February 19, 2013,
in the Court of Common Pleas of Lehigh County,
Criminal Division, at No(s): CP-39-CR-0002791-2012

BEFORE:  ALLEN, OLSON, and OTT, JJ.

MEMORANDUM BY ALLEN, J.:                **FILED OCTOBER 10, 2014**

Marcos J. Tavarez ("Appellant") appeals from the judgment of sentence imposed after he entered a guilty plea to robbery and criminal conspiracy.[1]  Appellant asserts that the trial court abused its discretion in applying the deadly weapon-used enhancement[2] to his sentence.  After careful review, we affirm.

The trial court summarized the procedural posture of this case as follows:

> On December 17, 2012, [Appellant] pleaded guilty to Robbery and Criminal Conspiracy.  This was an open plea with an agreement that the counts would run concurrently and the

---

[1] 18 Pa.C.S.A. §§ 3701 and 903 respectively.

[2] 204 Pa. Code § 303.10(a)(2).

Commonwealth would not evoke the mandatory minimum sentence. [The trial court] ordered a Pre-sentence Investigation Report (PSI), and on February 19, 2013, [the trial court] sentenced [Appellant] to a period of confinement of not less than 4½ years nor more than 15 years in a State Correctional Institution. This sentence was within the standard range after applying the deadly weapon used enhancement, pursuant to 204 Pa.Code §§ 303.9(b) and 303.10(a)(2). On March 1, 2013, [Appellant] filed a Post-Sentence Motion, which [the trial court] denied following a hearing on April 12, 2013. This appeal followed.

Trial Court Opinion, 7/2/13, at 1.

Appellant presents a single issue for our review:

WHETHER THE EVIDENCE SUPPORTED THE LOWER COURT'S DETERMINATION THAT THE FACTS OF THE CASE ALLOWED FOR THE APPLICATION OF THE DEADLY WEAPON ENHANCEMENT – WEAPON USED TO THE SENTENCING GUIDELINES AS APPLIED TO [APPELLANT]?

Appellant's Brief at 7.

The applicable portion of the Pennsylvania Code provides:

**§ 303.10. Guideline sentence recommendations: enhancements.**

(a) *Deadly Weapon Enhancement*.

(1) When the court determines that the offender possessed a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Possessed Matrix (§ 303.17(a)). An offender has possessed a deadly weapon if any of the following were on the offender's person or within his immediate physical control:

(i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded, or

(ii) Any dangerous weapon (as defined in 18 Pa.C.S. § 913), or

- 2 -

(iii) Any device, implement, or instrumentality designed as a weapon or capable of producing death or serious bodily injury where the court determines that the offender intended to use the weapon to threaten or injure another individual.

(2) When the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.17(b)). An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual.

Appellant recognizes that the trial court, "after hearing all testimony and considering all evidence determined that the deadly weapon enhancement applied and [Appellant] did in fact possess and use the firearm during the robbery." Appellant's Brief at 12. Appellant explains the significance of the trial court's determination:

> This determination is important because the deadly weapon enhancement can only be applied to a guidelines sentence if the sentencing judge determines that [Appellant] possessed the deadly weapon during the commission of the offense. 204 Pa. Code § 303.10. The Commonwealth has the burden of proving that [Appellant] 'possessed' the firearm such that it was either on his person or within his immediate control. This allows for the enhancement even if [Appellant] did not have it on his person but was nonetheless able to control it based on the facts of the case. This prevents the application of any enhancement in situations wherein only a [d]efendant's accomplice possesses the weapon and the weapon's use is not within the [d]efendant's immediate physical control. Commonwealth v. Bowen, 417 PA. Super. 340, 612 A.2d 512, 516 (PA. Super. 1992); see also Commonwealth v. Greene, 702 A.2d 547, 552 (PA. Super. 1997). The sentencing court must further make the determination as to whether or not the [d]efendant's possession of the weapon included his use of the weapon during the commission of the offense. The possession of the weapon, only, allows for the application of the deadly

weapon-possessed sentencing matrix which, while it does increase the sentencing ranges, is not the highest range. 204 Pa. Code § 303.10(a)(1). However, if the court determines that the person not only possessed it but used it then the higher sentencing matrix is applied for the deadly weapon enhancement – used. 204 Pa. Code § 303.10(a)(2).

… This decision was critical as the sentencing range to be applied without any enhancement would have been a range of not less than 22 months to no more than 36 months of incarceration. The deadly weapon enhancement – possessed matrix increases that range [to] 31 to 45 months and the deadly weapon enhancement – used matrix increases it even further to 42 to 54 months. In fact, the court followed that guideline range by imposing a sentence [at] the maximum level in the deadly weapon enhancement – used matrix.

Appellant's Brief at 12-14.

We acknowledge, before proceeding further with our analysis, the decision of the United States Supreme Court in ***Alleyne v. United States***, 133 S.Ct. 2151 (2013) on June 17, 2103 – four months after the February 19, 2013 entry of Appellant's judgment of sentence – holding that "any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." ***Alleyne***, 133 S.Ct. at 2155. We are mindful of ***Alleyne*** and the influx of Pennsylvania case law that is evolving as a result of ***Alleyne***. We additionally recognize that in ***Commonwealth v. McKeithan***, 504 A.2d 294, 298 (Pa. Super. 1986), we stated "the possession of a deadly weapon is not an element of a crime, but a sentencing factor." ***See also Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1270 n.10 (Pa. Super. 2014) (*en banc*). We, along with the parties and trial court in the present case, do not address the

import of **Alleyne** vis-a-vis this appeal, because our analysis focuses on Appellant's claim that "the evidence as presented was inconclusive in showing that [Appellant] possessed the firearm at anytime during the commission of the robbery…" Appellant's Brief at 9.

Appellant's challenge to the trial court's application of the deadly weapon enhancement relates to the discretionary aspects of his sentence. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal[.]" **Commonwealth v. Rhoades,** 8 A.3d 912, 916 (Pa. Super. 2010). Before we reach the merits of Appellant's claim, we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue with the trial court at sentencing or in a post-sentence motion; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. **Commonwealth v. Austin,** 66 A.3d 798, 808 (Pa. Super. 2013) (citation omitted).

Here, Appellant filed a timely notice of appeal, preserved his claim in his timely post-sentence motion, and has included in his appellate brief a separate statement raising a "substantive question as to the discretionary aspect of sentencing." Appellant's Brief at 10. Further, this Court has held that the application of the deadly weapon enhancement presents a

substantial question. *See e.g., Rhoades, supra*. We therefore proceed to address the merits of Appellant's claim.

As stated above, the essence of Appellant's argument is that "the evidence as presented was inconclusive in showing that [Appellant] possessed the firearm at anytime during the commission of the robbery and, in fact, it was more than likely that it was the co-defendant that possessed the firearms throughout the entire episode." Appellant's Brief at 9. Appellant avers that he "openly admitted his involvement in a robbery … [but] always asserted that he did not possess or use any firearms as part of his involvement in the robbery but rather the other co-defendants were the participants who had firearms in their possession or did in fact use them." *Id*. at 11.

Our standard of review for Appellant's challenge to the discretionary aspects of his sentence is an abuse of discretion. *Commonwealth v. Scullin*, 607 A.2d 750, 752 (Pa. Super. 1992). An abuse of discretion is more than just an error in judgment.... [O]n appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. *Commonwealth v. Greene*, 702 A.2d 547, 551 (Pa. Super. 1997) (citation omitted).

In applying the deadly weapon-used enhancement, the trial court explained:

> An offender uses a deadly weapon if a firearm was employed by the offender in a way that threatened or injured another individual. 204 Pa. Code § 303.10. The standard of proof governing the applicability of the deadly weapon enhancement is a preponderance of the evidence. *Commonwealth v. McKeithan*, 504 A.2d 294 (Pa. Super. 1986). A preponderance of the evidence is tantamount to a 'more likely than not' standard. *Commonwealth v. Jackson*, 53 A.3d 952 (Pa. Cmwlth. 2012) (quoting *Commonwealth v. $6,425.00 Seized from Esquilin*, 880 A.2d 523, 529-30 (Pa. 2005).

Supplemental Trial Court Opinion, 1/17/14, at 1-2.

Our review of the record reveals that at the guilty plea hearing, the prosecutor in her recitation of the facts never stated that Appellant used or possessed the handgun during the robbery. *See* N.T., 11/17/12, at 13-16. The prosecutor clearly articulated that "there is going to be an issue about [the deadly weapon enhancement] at sentencing." *Id*. at 2, 16. After Appellant admitted to participating in the robbery and conspiracy, Appellant's counsel stated:

> Your Honor, at this point, the only thing I was going to say, that's going to get into the possession of the deadly weapon issue, and I would like an opportunity to actually discuss further with [Appellant] and challenge at the actual sentencing. I mean, he will admit he was inside the residence.

*Id.* at 18.

However, the prosecutor summarized the facts of the case as follows:

> On May 26th of 2012, members of the Allentown Police Department were dispatched to 1004 Tilghman Street, Apartment 2, for a report of a robbery that was in progress. As the police responded, they did come into contact with [Appellant] who was being held by a group of neighbors in an area of the 900 block of Cedar Street.

- 7 -

Other officers had continued on to 1004 Tilghman Street where they made contact with the victim, Ana Encarnacion. She indicated that three Dominican males had entered her home, and they held her and her nine-year-old daughter at gunpoint while robbing them of several items.

***She indicated that there was one of the three males who was brandishing a gun and wearing a black ski mask***, and that individual also was demanding the money and valuables. They kept asking her where the money was over and over.

The victim also indicated that the males had grabbed her daughter from behind, one of the males, and then held a gloved hand over the daughter's mouth. And, in fact, when the police had arrived, the nine-year-old daughter did have imprints on her face consistent with the raised dots of a glove in her mouth area.

She indicated that $300 had been taken from her wallet along with her laptop, an iPod and an iPhone. She wasn't sure whether or not anything else had been taken.

As the individuals were leaving, she was able to yell to her husband for help, and at that point in time, the group outside of neighbors, had chased [Appellant] and held him down.

When they got to that location, Your Honor, the police did observe that he, [Appellant], was laying face down in the front yard of 969 Cedar Street with a group of men around him. The men immediately began yelling that [Appellant] was just involved in a residential robbery, ***and laying next to him in the yard was*** a gray bag, ***a ski mask*** and a pair of gloves. Inside of the bag was the laptop, an iPod, jewelry and a purse. The exact contents of the purse were not identified at that time, but later on it was determined that there was a quantity of cash.

Your Honor, the police were also dispatched to another location at 931 Liberty Street for a report of another male who had shot himself while running from the scene of the robbery. That individual was identified as Asley Diaz.

The police were able to identify that the driver of the vehicle that had brought the three individuals who entered the home had never entered the home, and that his name was Juan Cruceta.

And the police further identified that the third individual inside the home was a juvenile, who was 17 at the time, Pedro Santana.

All four of the defendants after being Mirandized gave statements, Your Honor, and I would suggest to the Court that there were inconsistencies with regard to how Pedro Santana and [Appellant] reported what occurred, in that Pedro Santana claimed that he acted as a lookout, and had not gone into the apartment or participated in the actual taking of items or the holding the young girl or the mother or the brandishing of the gun.

[Appellant] put himself in that same position as well. ***However, [Appellant] was found with the ski mask***, the gloves and the stolen items.

N.T., 11/17/12, at 13-16 (emphasis supplied).

Appellant did not object to the prosecutor's summary. Immediately after the prosecutor's summary, the following exchange ensued:

THE COURT:   Okay.

[PROSECUTOR]:   So that's the issue that's going to come up at sentencing with regard to the deadly weapon enhancement.

THE COURT:   Is it clear whether [Appellant] had possession of the deadly weapon?

[PROSECUTOR]:   There was no gun recovered at the scene where he was –

THE COURT:   There was a description from the victim –

[PROSECUTOR]:   Correct.

THE COURT:    -- of the ski mask?

[PROSECUTOR]:   It was the fact that the ski mask, this individual, was brandishing a handgun, but [the co-defendant] did shoot himself running from the scene with a gun as well.

THE COURT:     It could mean a lot of different things.

[PROSECUTOR]:  Exactly.

*Id*. at 16.

After the prosecutor's summary, the trial court addressed Appellant:

THE COURT:     All right.  Sir, do you understand that what the District Attorney just stated was the Commonwealth's evidence against you?

[APPELLANT]:   Yes, sir.

THE COURT:     Do you understand this is what the District Attorney is saying the Commonwealth could prove that you did?

[APPELLANT]:   Yes, sir.

*Id*. at 16-17.

Upon further inquiry by the trial court, Appellant, through counsel, admitted to being "inside the residence … [and that] there was a total of three inside and two of whom are alleged to have a weapon, one of them allegedly did not."  *Id*. at 18.  Appellant admitted being "a robber … and a conspirator…", but he did not stipulate to possessing or using a handgun, and expressly denied possessing or using a handgun.  *Id*.

The trial court deferred sentencing for the preparation of a pre-sentence investigation report.  At the sentencing hearing, the prosecution argued in favor of the deadly weapon enhancement, but did not present any witnesses or offer any exhibits into evidence.

In arguing against the deadly weapon enhancement, Appellant's counsel argued that there were "a number of factors within the investigation that would counsel against [Appellant] being the individual with the gun." N.T., 2/19/13, at 7-8. Appellant presented three witnesses at the hearing: himself, his mother, Maria Tavarez, and his best friend, Francisco Polanco. Ms. Tavarez and Mr. Polanco testified to Appellant's good character. Appellant testified on direct examination about the robbery:

> [APPELLANT]:    All right.  We was driving around, Juan was the driver, I was in the passenger seat, we saw that the man we was going to rob in the back yard of his house and that the front door of the building was open.  It – the building was a two family house so it – what I thought it could have been open because of the neighbors – the people that live in the first floor, Juan instructed me that he was going to distract the owner of the house because he knew him personally and that the money was going to be in the middle room of the second floor of the house. So, he drops us off in front of the house and he drives over to the back part so he can distract the owner.
>
> [DEFENSE COUNSEL]:  So what did you do when you went inside?
>
> [APPELLANT]:    I waited on the porch for the two other guys to go in first and about thirty seconds later I walked into the house – uhm – I walk upstairs to the second floor and I look – and the first place I go is to the middle room which was a room full of beds, it was – I think it was the children's room – uhm – I lasted about a minute there and then I moved over to another bedroom, it looked to be the master bedroom and I looked in their room too, it lasted a minute or two of looking, but I couldn't find no safe and then I got to the hallway and then I look into the kitchen and that's when I see my co-defendants with the – with the victims and I tell them I couldn't find nothing and we all agreed to leave. So, --
>
> [DEFENSE COUNSEL]: And if I may, just – the Commonwealth is going to point out the use of gloves and my client can speak to

the use of gloves. Were there gloves used in the commission of the crime and how were they used and in what capacity?

[APPELLANT]: Uhm – I handed out pairs of gloves to every member – all three of us that were going to go inside the house, gloves that I had inside my car. I handed them to all three of us.

N.T., 2/19/13, at 15-17.

On cross-examination, Appellant conceded that originally he told police that he had not gone inside the house and served as the look-out. *Id*. at 17. He also agreed that he wore gloves and a gray shirt, and was found with a black ski mask, although Appellant testified that he "didn't wear it inside the – I took it off so I could see better." *Id*. at 18-19. The following exchange occurred:

[PROSECUTOR]: Well, would you agree with me that the adult female victim indicated that the man who was holding her and put a gun to her head was wearing a black ski mask and had a light colored shirt. Correct?

[APPELLANT]: Again, I have to – okay. Yes, but – but that's --

[PROSECUTOR]: And would you also agree with me that you are, in fact, Dominican. Correct?

[APPELLANT]: Yes, ma'am.

*Id*. at 20.

Neither the prosecutor nor defense counsel asked Appellant whether he possessed or used a handgun during the robbery. Nonetheless, the trial court concluded by a preponderance of the evidence, ***Commonwealth v. McKeithan,*** 504 A.2d at 298-299, that it was "more likely than not" that

- 12 -

Appellant used a gun in the commission of the robbery. Trial Court Opinion, 1/17/14, at 2. We concluded in **McKeithan** that the possession of a deadly weapon for purposes of weapon enhancement of sentencing may be proven by circumstantial evidence. **Commonwealth v. McKeithan,** 504 A.2d at 299 (rejecting Appellant's claim that the evidence was insufficient to support the application of the deadly weapon enhancement where no one ever saw a weapon, nor was any ever found).

Accordingly, on the record before us, there was sufficient circumstantial evidence from the guilty plea and sentencing hearings from which the trial court could conclude, by a preponderance of the evidence, that Appellant used a handgun during the robbery. We therefore find no abuse of discretion by the trial court in applying the deadly weapon-used enhancement to Appellant's sentence. In her summary of the facts of the case, N.T., 11/17/12, at 13-16, which she recited as part of Appellant's guilty plea – and to which Appellant did not object – the prosecutor stated that "three Dominican males … entered [the victims'] home and held [the victim] and her nine-year-old daughter at gunpoint while robbing them of several items." *Id*. at 13. The prosecutor never specifically stated that Appellant used or possessed the handgun during the robbery, but she did state that "one of the three males who was brandishing a gun [was] wearing a black ski mask." *Id*. at 14. She also stated, and Appellant conceded at sentencing, that Appellant was in possession of a ski mask when he was apprehended shortly after the robbery. *Id*. at 14-15; 2/19/13, at 20. Given

- 13 -

the foregoing, the record supports the trial court's conclusion that it was "more likely than not" that Appellant used a handgun during the robbery, thus supporting the application of the deadly weapon enhancement at sentencing.

Judgment of sentence affirmed.

Judge Ott joins the disposition.

Judge Olson concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/10/2014