611 A.2d 1211

**COMMONWEALTH of Pennsylvania**

v.

**Daniel HARPER, Appellant.**

Superior Court of Pennsylvania.

Argued March 19, 1992.

Filed June 16, 1992.

Gregory H. Chelak, Hawley, for appellant.

Curtis J. Rogers, Asst. Dist. Atty., Stroudsburg, for Com., appellee.

Before CAVANAUGH, OLSZEWSKI and BECK, JJ.

BECK, Judge.

The issue we explore, *inter alia,* is the fourth amendment meaning of "seizure of the person" after the United States Supreme Court's decision in *California v. Hodari D.,* 499 U.S. ——, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

This is an appeal from the judgment of sentence imposed upon Daniel Harper after a jury convicted him of one count of possession with intent to deliver cocaine and one count of simple possession of cocaine. Appellant seeks relief on three grounds. First, he argues that the trial court erred in denying his motion to suppress evidence. Second, he argues that the evidence was insufficient to sustain his conviction. Finally, appellant contends that the trial court erred in sentencing him under the mandatory minimum sentencing guidelines of the sentencing code without allowing him the opportunity to present evidence, at the sentencing stage, on the amount of cocaine actually in his possession. We conclude that appellant is not entitled to relief and we affirm the judgment of sentence.

The evidence upon which appellant was convicted was as follows. Police officers in Stroudsburg, Pennsylvania were working in a special narcotics interdiction unit designed to apprehend narcotics traffickers at transportation terminals. Agent Ronald Paret and a partner were assigned to this unit and were watching passengers at the Martz Trailways Bus Terminal in Stroudsburg. Agent Paret saw appellant and his companion purchase round trip bus tickets to New York at about 4 P.M. on April 11, 1990, and board a bus to New York City. Neither was carrying any luggage. Agent Paret had no other information regarding the two

individuals, nor did he know when they would be returning to Stroudsburg.

However, to follow-up on the investigation, Agent Paret returned to the bus terminal just past midnight to see who, if anyone, got off the bus from New York City. He watched the passengers disembark and saw appellant and his companion get off the bus and walk toward him. Paret, who was not in uniform at the time, made eye contact with the two men at which point both men turned in the opposite direction and began a "very fast-paced walk" away from the officer. As they walked away, Agent Paret approached them and identified himself as a police officer. Appellant and the other man broke into a run, rounded the corner and headed for the rear of the building. The police officer ran after them and as he followed them, he saw appellant take off the warm-up jacket he was wearing and throw it down. A moment later appellant did the same with a blue wool hat he was wearing. Immediately thereafter, Paret lost sight of appellant because he ran between some houses.

Having temporarily lost sight of appellant, Paret circled back and retrieved the discarded items of clothing. Alongside the warm-up jacket, Paret found a clear plastic bag containing white powder. The hat also contained a small bag of white powder. Meanwhile, other police officers had detained appellant. Agent Paret walked over to where appellant was stopped and advised him that he was under arrest. The white powder tested positive for cocaine.

The bags contained a combined total of 11.5 grams of cocaine. At trial, Agent Paret testified that the street value of the drugs seized was about twelve hundred dollars ($1,200.00). Agent Paret testified that in his experience, this quantity of cocaine was too large to be consistent with purely personal use. He also stated that cocaine for personal use was available in Stroudsburg and that, given the circumstances of appellant's round trip journey to New York to buy the drugs in bulk, it was his expert opinion that the drugs were possessed for resale.

■ Appellant challenges the trial court's refusal to suppress the evidence, i.e., the cocaine discarded by him and recovered by the police. Appellant argues that since Agent Paret had neither probable cause to arrest him nor reasonable suspicion to effect an investigatory stop, the cocaine must be excluded as fruits of an unconstitutional seizure of his person. The trial court found that appellant's activities upon seeing Agent Paret gave rise to a reasonable suspicion that criminal activity was afoot and that therefore the drugs were the fruits of a reasonable stop. In fact, as a result of a recent and very similar United States Supreme Court case, *California v. Hodari D.*, 499 U.S. ——, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), our resolution of the issue is much simplified. In our view, as will be discussed *infra, Hodari D.* represents a significant departure from prior fourth amendment cases. However, it is also clear that *Hodari* is directly on point and governs the result here. Thus, although in necessary reliance on *Hodari D.* we follow a wholly different rationale from that which the trial court advanced in explaining its ruling, we conclude that the motion to suppress was properly denied.[1]

In *Hodari D.* a group of young people huddled around a car scattered at the approach of an unmarked police car. The two officers occupying the car were wearing jackets embossed with "police" on the front and back. Hodari D. ran through an alley and one of the officers ran after him. The officer pursuing Hodari took a different route, so that, in a few moments, the officer was running straight at Hodari. Hodari didn't see the officer until he was almost upon him at which point Hodari discarded a small rock which turned out to be crack cocaine. Ultimately, Hodari was tackled, handcuffed and arrested.

The trial court denied Hodari's motion to suppress. The California Court of Appeals reversed, finding that Hodari

---

**1.** It is well-settled that an appellate court may affirm the decision of the trial court if there is any basis on the record to support the trial court's action. This is so even if we rely upon a different basis in our decision to affirm. *See, e.g., Commonwealth v. Pacell,* 345 Pa.Super. 203, 497 A.2d 1375, 1377 n. 1 (1985); *Commonwealth v. Guimento,* 341 Pa.Super. 95, 491 A.2d 166 (1985).

had been "seized" when he saw the officer running towards him, that the seizure was unreasonable under the fourth amendment and that the cocaine was the fruit of the unlawful seizure. The United States Supreme Court granted certiorari and reversed.

The issue in *Hodari*, as the Supreme Court stated, was "whether, at the time he dropped the drugs, Hodari had been 'seized' within the meaning of the Fourth Amendment." *California v. Hodari D.*, 499 U.S. at ——, 111 S.Ct. at 1548, 113 L.Ed.2d at 695.[2] If so, the drugs would have been the fruits of an unlawful seizure (given the conceded lack of a reasonable basis for the stop—see footnote 2) and should have been suppressed. On the other hand, if Hodari had not been seized when he dropped the drugs, the drugs would have been abandoned by Hodari and lawfully recovered by the police. Under those circumstances, the drugs

---

**2.** In *Hodari,* the state conceded that the police officers did not have reasonable suspicion under the standards developed in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, to stop Hodari. In order to stop and briefly detain a citizen under *Terry,* a police officer must be able to point to specific, articulable facts which support a reasonable suspicion that criminal activity may be afoot. This investigative stop constitutes a restraint on liberty and is a seizure of the person within the meaning of the Fourth Amendment. Therefore in order for a *Terry* stop to be reasonable, thereby meeting the demands of the constitution, it must be based on a reasonable belief that the individual's suspicious conduct suggests criminal activity. In *Hodari,* Mr. Justice Scalia accepts as at least arguable the theory that "young men who scatter in panic upon the mere sighting of the police" may justify a brief investigative stop under *Terry.* The Supreme Court did not decide the issue in *Hodari* but instead relied on the State's concession that such a stop would be unreasonable.

In our case, a similar concession has not been made by the Commonwealth. In fact, the trial court based its decision on the reasonableness of the police action under *Terry,* and the Commonwealth continues to argue that position to this court. However, we conclude that it is unnecessary to decide whether the "activity" observed by Agent Paret would have justified stopping appellant under the *Terry* standard. We need not reach that issue because, as will be discussed *infra,* under the teachings of *Hodari,* no seizure of the person within the meaning of the fourth amendment occurred prior to appellant's dropping the cocaine. It is unnecessary to debate the reasonable basis for a stop if no stop occurred from which a seizure of evidence followed.

were admissible. *Id.*, 499 U.S. at ——, 111 S.Ct. at 1548–50, 113 L.Ed.2d at 695–696.

Mr. Justice Scalia delivered the opinion of the Court. He began by noting that the fourth amendment's protection against "unreasonable ... seizures" includes seizures of the person. The question is what constitutes such a seizure for purposes of the fourth amendment. Clearly, an "application of physical force to restrain movement" is a seizure. *Id.*, 499 U.S. ——, 111 S.Ct. at 1550, 113 L.Ed.2d at 697. However, the Court found that a "seizure" will not result when the police attempt to demonstrate a "show of authority" to an individual who then refuses to capitulate to it. Even though the Court accepted for purposes of the decision that the officer's pursuit of Hodari was a "show of authority" which manifested a call to halt, it also categorically rejected Hodari's argument that this "show of authority", without more, constituted a seizure or a constitutionally cognizable restraint of his liberty. Thus, the Court stated:

> The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not.

*Id.*

Illustrating its point with respect to what is not a seizure, the Court stressed:

> It does not remotely apply, however, to the prospect of a policeman yelling "Stop, in the name of the law!" at a fleeing form that continues to flee. That is not a seizure. Nor can the result [Hodari] wishes to achieve be produced—indirectly, as it were—by suggesting that [the officer's] uncomplied-with show of authority was a common-law arrest, and then appealing to the principle that all common-law arrests are seizures. An arrest requires *either* physical force (as described above) *or*, where that is absent, *submission* to the assertion of authority.

*Id.* (footnote omitted; emphasis in original).

The Court concluded simply:

In sum, assuming that [the officer's] pursuit in the present case constituted a "show of authority" enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled. The cocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied.

*Id.*, 499 U.S. ——, 111 S.Ct. at 1552, 113 L.Ed.2d at 699.

As noted above, *Hodari* substantially narrowed the definition of what constitutes a "seizure" for purposes of fourth amendment protection and in so doing significantly altered the direction of earlier case law. Prior to *Hodari* it was understood that, while not every approach by a police officer toward a citizen involved an encounter of constitutional dimension, certain signposts were used by the courts to determine whether the intrusion by the police reached the level of a seizure. *In re Jermaine,* 399 Pa.Super. 503, 508, 582 A.2d 1058, 1060 (1990). Generally, a seizure was thought to have occurred, for purposes of triggering constitutional protection, if the officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen....". *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). The test to determine whether a sufficient restraint of personal liberty has occurred was first formulated in *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). To distinguish between a constitutionally significant seizure and an police-citizen encounter without fourth amendment implications, the *Mendenhall* court noted the following:

The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's

liberty or privacy as would under the Constitution require some particularized and objective justification.

\* \* \* \* \* \*

*We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.* Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*United States v. Mendenhall,* 446 U.S. at 553–54, 100 S.Ct. at 1877, 64 L.Ed.2d at 509 (citations omitted) (emphasis supplied).

The objective "free-to-leave" standard articulated in *Mendenhall* has been reiterated and applied repeatedly by the courts. *See e.g. Michigan v. Chesternut,* 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988); *INS v. Delgado,* 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *Commonwealth v. Ellis,* 379 Pa.Super. 337, 549 A.2d 1323 (1988). The standard was an objective one, i.e. dependent not upon a particular suspect's subjective impressions or reactions, but upon a reasonable person's interpretation of the police's conduct. Thus, as the dissent in *Hodari* noted, the California Court of Appeal applied the traditional *Mendenhall/Chesternut* test to the facts before it in *Hodari* and concluded as follows:

This case involves more than a pursuit, as [the officer] did not pursue [Hodari], but ran in such a fashion as to cut him off and confront him head on. Under the rationale of *Chesternut,* this action is reasonably perceived as an intrusion upon one's freedom of movement and as a maneuver intended to block or "otherwise control the direction or speed" of one's movement.

618

*California v. Hodari D.*, 499 U.S. at ——, 111 S.Ct. at 1559 n. 14, 113 L.Ed.2d at 708 n. 14 (Stevens, J., dissenting).

■■■■ The United States Supreme Court, however, rejected the argument that Hodari was "seized" for fourth amendment purposes because under the *Mendenhall/Chesternut* standard a "reasonable person would have believed he was not free to leave." The *Hodari* Court, in what the dissent characterized as "nothing if not creative lawmaking", *id.* 499 U.S. at ——, 111 S.Ct. at 1559, 113 L.Ed.2d at 707, explained that the *Mendenhall/Chesternut* test did *not* state that a citizen is seized *whenever* he or she reasonably perceives that his or her liberty has been restrained. *Id.*, 499 U.S. at ——, 111 S.Ct. at 1551, 113 L.Ed.2d at 698. Instead, the *Mendenhall/Chesternut* standard states a necessary but not sufficient condition for a fourth amendment seizure to have occurred. After *Hodari*, even if a citizen might reasonably perceive, based on an officer's words or actions, that he or she was not free to leave, unless the citizen also complies with the perceived order, no seizure has occurred.[3]

■■■ As is evident from the preceding discussion, our determination of whether a fourth amendment seizure oc-

---

**3.** Focusing on this analysis in particular, one commentator denounced the *Hodari* decision in these terms:

> [W]hat the Court in *Hodari D.* ought to have recognized is that the "not free to leave" concept of *Mendenhall–Royer* has nothing to do with a particular suspect's choice to flee rather than submit or with his assessment of the probability of successful flight. But instead, as the dissenters lament, the majority "concludes that the timing of the seizure is governed by the citizen's reaction, rather than by the officer's conduct." In this sense as well, *Hodari D.* is inconsistent with established Fourth Amendment jurisprudence, including principles emphasized in the very cases relied upon by the majority. . . . [I]n *Michigan v. Chesternut,* the Court reiterated that in determining whether a *Terry* stop has occurred, it is necessary to utilize a standard that "allows the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment." Such is certainly not the case in *Hodari D.,* for what would otherwise be a groundless and thus illegal *Terry* seizure becomes conduct totally outside the Fourth Amendment merely because of the suspect's nonsubmission.

3 W. LaFave, *Search and Seizure* § 9.2, p.89–90 (2d ed. 1987, Supp. 1992) (footnotes omitted).

curred in the instant case prior to appellant's shedding his jacket and hat, is significantly changed since *Hodari* was decided. No longer do we examine whether a reasonable person, in appellant's place, would have believed that he was not free to leave and that, by pursuing him, the police meant to restrain his liberty and indeed effect his capture. *Hodari*'s plain answer is that, since appellant did not yield to this admitted show of authority, no fourth amendment guarantees are implicated. Whatever may be the implications regarding the protection the fourth amendment henceforth provides for our citizens, it is indisputable that *Hodari* has altered the reach of that constitutional right.

■ It is clear that *Hodari* controls the instant case. In fact, the two are indistinguishable. As in *Hodari*, even assuming that Agent Paret's approach and pronouncement that he was police was a "show of authority" akin to an order for appellant to stop, the fact that appellant did not obey but instead took off running is dispositive. No seizure within the meaning of the fourth amendment had taken place at the time appellant discarded his jacket and hat containing the cocaine. Therefore, the drugs were not the fruits of an unlawful seizure of the appellant and were properly admitted in evidence.

We next address appellant's challenge to the sufficiency of the evidence. In particular, appellant claims that there was insufficient evidence to support the inference that appellant possessed the cocaine with intent to deliver, as opposed to for personal use. We disagree.

■ The standard by which this court judges the sufficiency of the evidence in a criminal case is settled. We must view the evidence in the light most favorable to the Commonwealth as verdict winner, and accept as true all evidence and all reasonable inferences therefrom, which, if believed, could properly support the verdict. *Commonwealth v. Hughes*, 521 Pa. 423, 429, 555 A.2d 1264, 1267 (1989). In order to uphold appellant's conviction for possession of narcotics with intent to deliver, the Commonwealth

must come forward with proof that appellant possessed a controlled substance, and did so with intent to deliver it. *Commonwealth v. Cardona*, 316 Pa.Super. 381, 387, 463 A.2d 11, 15 (1983). The intent to deliver may be inferred from an examination of all the facts and circumstances surrounding the case. *Commonwealth v. Robinson*, 399 Pa.Super. 199, 204, 582 A.2d 14, 17 (1990).

■ In support of his argument that the evidence failed to establish the requisite intent to deliver, appellant points out that Agent Paret's testimony failed to reveal certain common indicia of drug trafficking. Appellant states that the officer had not made any "controlled buys" from him, had found no marked currency on him, and had seized "no scales, measuring items, unused plastic bags, wrapping material or paraphernalia" from him. However, the failure of the Commonwealth to introduce this assertedly missing evidence, particularly in the context of the instant case, is not dispositive of the sufficiency question. This court has held that the totality of the circumstances will be determinative, not the presence or absence of any particular piece of evidence ordinarily indicative of drug trafficking. *See Commonwealth v. Robinson, supra*, 399 Pa.Super. at 204, 582 A.2d at 17.

■ We conclude that here the totality of the circumstances permitted the jury to conclude, beyond a reasonable doubt, that appellant possessed the cocaine with intent to deliver it. The quantity of cocaine was substantial, unlike in the case relied upon by appellant, *Commonwealth v. Smagala*, 383 Pa.Super. 466, 557 A.2d 347 (1989). In *Smagala*, the accused possessed less than a gram of cocaine. Moreover, in *Smagala*, the small amount seized was taken along with all the necessary tools a drug user ordinarily would need to consume the cocaine either by inhaling it or converting it into crack for smoking. Although in *Smagala* a number of glassine baggies were also seized, many of them were damaged from prior use and not reusable. In sum, the *Smagala* court found that the totality of the circumstances led it to "the unavoidable conclusion that

appellant intended either to smoke the cocaine or inhale it."
*Id.*, 383 Pa.Super. at 477, 557 A.2d at 352.

In the instant case, by contrast, the Commonwealth's expert stated repeatedly that the amount of cocaine, which was several-fold greater than that seized in *Smagala*, was "not consistent with personal use, but more consistent with intent to deliver." Agent Paret explained that the purchase in bulk of a costly amount of cocaine after a hasty round trip to New York bespoke to him an "intent to bring the stuff back and make a profit from it."

When questioned on cross-examination by defense counsel the expert stated that while he couldn't "rule out" personal use, he insisted that based on his experience appellant's possession was "more consistent with distribution." He further explained that this conclusion was not based on amount alone but also took into account appellant's activity in going to New York with such a quick turnaround time. Paret described New York as a major distribution point for cocaine. On re-direct examination Paret also testified that 11.5 grams would be an "uncommon" amount of drugs to purchase in a "street buy" which usually occurred in much smaller quantities.

In fact, we find this case indistinguishable from *Commonwealth v. Robinson, supra,* 399 Pa.Super. at 204, 582 A.2d at 17, wherein we noted that, although "cross-examination ... pointed up possible other conclusions, the [expert] witness remained unshaken in his opinion" that the drugs were possessed to resell. Agent Paret's conclusion was similarly unshaken and was based on support from the record. The jury was free to accept his opinion and conclude that appellant possessed the cocaine with intent to deliver it. We note, of course, that there is no requirement that the Commonwealth exclude all possibilities consistent with innocence or that the expert be able to categorically rule out the possibility of possession for personal use. *Cf. Commonwealth v. Akers,* 392 Pa.Super. 170, 180, 572 A.2d 746, 751 (1990)

Although appellant makes much of supposed "missing" evidence such as an absence of drug paraphernalia, marked currency, etc., in the context of this case, the lack of these potential indicia of drug dealing is wholly neutral. Common sense dictates that since appellant just got off the bus when he was apprehended, of course he had none of the typical drug marketing items with him.

Finally, we address appellant's sentencing claim and, in particular, his argument that the trial court erred when it sentenced appellant under the mandatory minimum sentencing provisions of the controlled substances statute. 18 Pa.C.S. § 7508(a)(3)(ii) (conviction of intent to deliver more than 10 grams of cocaine subjects person to mandatory minimum sentence). In essence, appellant's claim is that the trial court should have permitted evidence at sentencing, presumably proffered by appellant, that the bag of cocaine found by Agent Paret next to the discarded warm-up jacket was not actually in appellant's "possession or control". Apparently, although this is not explicit from the record, appellant was anxious to call a witness who assertedly would have testified that the cocaine near the jacket "belonged" to him and not to appellant. The trial court was both concerned that such uncounselled testimony from the alleged witness would result in self-incrimination and also noted that such testimony was irrelevant since the jury had already convicted appellant of possession with intent to deliver. Appellant's claim at sentencing, and now in his brief to this court, that he "did not possess or control the second packet of cocaine", is a denial of culpability not properly raised at sentencing. *Cf. Commonwealth v. Kreiser*, 399 Pa.Super. 370, 582 A.2d 387 (1990). We find that the trial court did not err in sentencing appellant under the mandatory minimum sentencing provisions.

Judgment of sentence affirmed.