J-A12028-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEANNA LYNN SAVINO | : | |
| | : | |
| Appellant | : | No. 1094 MDA 2020 |

Appeal from the Judgment of Sentence Entered July 29, 2020
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0004383-2018

BEFORE: LAZARUS, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.: **FILED SEPTEMBER 14, 2021**

Deanna Lynn Savino appeals from the judgment of sentence, entered in the Court of Common Pleas of Dauphin County, following a bench trial where she was convicted of two counts of possession with intent to deliver a controlled substance (PWID).[1] On appeal, Savino challenges the trial court's denial of her pre-trial motion to suppress all physical evidence seized by police following a traffic stop. Because Savino was stopped without reasonable suspicion and no exception to the warrant requirement applies under the facts of the case, we vacate, reverse, and remand.

At approximately 1:00 p.m. on May 28, 2018, Pennsylvania State Police Trooper Jordan Lantzy was travelling northbound in his vehicle on Route 11/15 when he observed, across the median, a vehicle legally parked on the shoulder of the southbound lane of travel. N.T. Suppression Hearing, 8/5/19, at 3.

---

[1] 35 P.S. § 780-113(a)(30).

Trooper Lantzy testified that the driver appeared to be looking at her phone or digging through her purse and was slumped over towards the passenger seat. *Id.* Trooper Lantzy also testified that he always stops when he sees a vehicle pulled over on the side of the road to check if the driver is okay. *Id.* Accordingly, Trooper Lantzy turned around onto the southbound lane, pulled in about 25 feet behind Savino's vehicle and initiated his emergency lights. *Id.* at 4. From his vehicle, Trooper Lantzy did not notice anything out of the ordinary with Savino's vehicle, and he did not see any visible signs of distress from the driver. *Id.* at 6. Trooper Lantzy testified that he did not observe any vehicle violations or have any suspicion of criminal activity. *Id.* at 13-14. Trooper Lantzy entered the vehicle's registration number into the police database system and determined that it belonged to Savino. *Id.* at 6. The database did not indicate any outstanding bench warrants for Savino. *Id.* at 19. When Trooper Lantzy exited his vehicle and walked over to the driver's side of the car, he observed that Savino's vehicle was running and that the driver was slouched over toward the passenger seat with a half-eaten hamburger in her lap. *Id.* at 7. Trooper Lantzy testified that Savino was unresponsive and that he believed she was possibly overdosing on drugs and in need of medical assistance. *Id.* at 7-8. He immediately called for Emergency Medical Service (EMS) response. *Id.*

Trooper Lantzy eventually roused Savino, who was lethargic and "unable to make sentences." *Id.* at 15. Savino testified she was "out of it" at the time of her encounter with Trooper Lantzy and has no distinct recollection of

what took place. *Id.* at 22. When asked at the suppression hearing whether she was under the influence of any drugs at the time, Savino testified that all she had done was "touch" some Fentanyl and only remembers breaking up the burger to share with her dog before being woken up by Trooper Lantzy. *Id.* Less than three minutes after Trooper Lantzy roused Savino, he began to question her about what she had ingested or drank that day. *Id.* at 8-9. In the dash camera video recorded by Trooper Lantzy's police vehicle, which was viewed by the court at the suppression hearing, Savino indicated that she had taken a white powdery substance about ten minutes before getting in the car to drive. *Id.* at 8-9, 15; Dash Camera Video, 5/28/18.

After waking Savino, Trooper Lantzy requested that she exit her vehicle and escorted her back to his vehicle and the EMS vehicle. Trooper Lantzy continued to question Savino at the back of the EMS vehicle. N.T Suppression Hearing, 8/5/19, at 12. Savino said she thought she had taken Fentanyl. *Id.* at 9. Trooper Lantzy then asked Savino if there were any drugs in her car, and Savino admitted there was a black backpack on the floor behind the driver's seat containing drugs. *Id.* Trooper Lantzy searched the backpack from Savino's vehicle; laboratory tests later determined that the substances in the backpack were eight pounds of methamphetamine and ten grams of Fentanyl. *Id.* at 9-10. Trooper Lantzy did not have a search warrant at the time he searched Savino's vehicle and backpack, but acknowledged he could have acquired one relatively easily. *Id.*, at 19. Less than 15 minutes after

initiating the stop, Trooper Lantzy decided to take Savino into custody. *Id.* at 16-17.

Trooper Lantzy escorted Savino to the police station, and they arrived about 25 minutes after the initiation of the stop. *Id.* at 16. At the station, Savino was seen by a drug recognition expert, read her *Miranda*[2] rights, had her blood drawn, and was fingerprinted. *Id.* at 16-17. The lab report, dated June 22, 2018, revealed that Savino's blood tested positive for amphetamine and oxycodone. *See* Affidavit of Probable Cause, 7/5/18. A warrant was issued for Savino's arrest on July 5, 2018.

On May 22, 2019, Savino filed a pre-trial motion, alleging her detention and warrantless vehicle search were illegal and that the contraband discovered in the back seat of her vehicle should be suppressed. On August 5, 2019, the trial court held a suppression hearing, at which both Trooper Lantzy and Savino testified. At the conclusion of the hearing, the trial court denied Savino's motion to suppress.[3] The trial court determined that suppression

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] Despite Pennsylvania Rule of Criminal Procedure 581's direction that "[a]t the conclusion [of a suppression] hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute," Pa.R.Crim.P. 581(I), here, the trial judge made no such statement or findings of fact on the record at the conclusion of the suppression hearing. The trial court's ruling at the hearing is evidenced by the following exchange:

*(Footnote Continued Next Page)*

was not warranted because Trooper Lantzy's actions were motivated by a desire to render assistance and he acted reasonably pursuant to the public servant exception to the warrant requirement. Trial Court Memorandum Opinion, 12/8/20, at 6.

Following a bench trial held on January 27, 2020, Savino was convicted of two counts of PWID. On July 29, 2020, the court sentenced Savino to 7½-15 years of imprisonment. Savino timely filed a notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Savino raises the following issue for our consideration: "Did not the court err in denying [Savino's] motion to suppress contraband seized without a warrant from the trunk of [her] vehicle when the seizure was the unlawful fruit of an investigative detention that was not based on facts justifying application of the 'public servant exception?'" Appellant's Brief, at 4.

In reviewing a trial court's denial of a suppression motion, our standard of review is limited to determining whether its factual findings are supported by the record and whether the legal conclusions drawn from those facts are free of error. *Commonwealth v. Bomar*, 826 A.2d 831, 842 (Pa. 2003).

---

The Court: We understand the position of the defense as well as the Commonwealth's arguments. We deny the motion to suppress.

[Defense Attorney]: Your Honor, may I make just a brief argument?

The Court: No.

N.T. Suppression Hearing, 8/5/19, at 25.

- 5 -

"[We] may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Russo*, 934 A.2d 1199, 1203 (Pa. 2007) (citation omitted). While we are bound by the suppression court's factual findings that are supported by the record, we are not bound by its conclusions of law which are subject to plenary review. *Commonwealth v. Gaul*, 912 A.2d 252, 254 (Pa. 2006); *Commonwealth v. Dean*, 940 A.2d 514, 516 (Pa. Super. 2008) (internal citations omitted).

Savino argues that Trooper Lantzy effected an investigative detention when he positioned his vehicle behind her vehicle on the side of the roadway and activated his overhead emergency lights. She further argues that the "public servant exception" to the warrant requirement does not apply to justify the warrantless stop because the trooper was unable to articulate any specific and objective facts prior to effecting the stop that would reasonably suggest Savino needed assistance. Appellant's Brief, at 13-14.

In its Rule 1925(a) opinion, the trial court concluded that Trooper Lantzy's observation of Savino on the side of the highway was a "specific, objective, and articulable" fact reasonably suggesting Savino needed assistance that justified the application of the "public servant exception." Trial Court Memorandum Opinion, 12/8/20, at 5-6. This exception exempts certain police actions motivated by a desire to assist citizens from the warrant requirement, under the umbrella of the "community caretaking doctrine." *Commonwealth v. Wilmer*, 194 A.3d 564, 568-69 (Pa. 2018).

"Both the United States and Pennsylvania Constitutions prohibit unreasonable searches and seizures." *Commonwealth v. Garibay*, 106 A.3d 136, 139 (Pa. Super. 2014).

> [T]he issue of whether an individual has been seized is distinct from the issue of whether that seizure was reasonable. The fact that a search may be deemed reasonable pursuant to an 'exception' to the warrant requirement does not mean that the individual was not subjected to a seizure in the first instance.

*Commonwealth v. Livingstone*, 174 A.3d 609, 619–20 (Pa. 2017) (footnote omitted).

In *Commonwealth v. McCoy*, 154 A.3d 813 (Pa. Super. 2017), this Court delineated the three types of encounters between law enforcement officials and private citizens as follows:

> A "mere encounter" need not be supported by any level of suspicion but carries no official compulsion to stop or respond. An "investigative detention" must be supported by reasonable suspicion and subjects the suspect to a stop and a period of detention, but it does not have the coercive conditions that would constitute an arrest. The courts determine whether reasonable suspicion exists by examining the totality of the circumstances. An arrest, or "custodial detention," must be supported by probable cause.

*Id.* at 816 (citation omitted). Under the Fourth Amendment, a person is considered seized "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he [or she] was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). *See also Commonwealth v. Edwards*, 194 A.3d 625, 632 (Pa. Super. 2018) (mere encounter can be any formal or informal interaction between officer and citizen; hallmark of this interaction is that it carries no official compulsion to

stop or respond, whereas investigative detention carries such compulsion by implication). The "free-to-leave" standard is objective and "dependent not upon a particular suspect's subjective impressions or reactions, but upon a reasonable person's interpretation of the police's conduct." *Commonwealth v. Harper*, 611 A.2d 1211, 1215 (Pa. Super. 1992). If there is any uncertainty as to whether an individual has been seized, "the crucial inquiry is whether the officer, 'by means of physical force or a show of authority,' has restrained a citizen's freedom of movement." *Livingstone*, *supra* at 619 (quoting *Mendenhall*, *supra* at 553).

Here, the suppression court upheld the warrantless stop and search of Savino and her vehicle based upon the "public servant exception" to the community caretaking doctrine. The doctrine acknowledges that the role of police is not limited to criminal activity, but also includes ensuring public safety and welfare, and it encompasses three specific exceptions for this purpose: the emergency aid exception, the automobile impoundment exception, and the public servant exception. *Livingstone*, *supra* at 626-27.

In *Livingstone*, *supra*,[4] our Supreme Court held that a police-citizen interaction, almost identical to the instant case, constituted an investigative

_____

[4] The *Livingstone* opinion was authored by Justice Todd. Justices Saylor and Dougherty joined in Justice Todd's decision. Justice Baer joined sections I (Background), II(A) (Seizure v. Mere Encounter) and II(B) (Community Caretaking Doctrine) of the opinion. Justices Donahue and Wecht joined sections I, II(A), & III (Conclusion) of Justice Todd's decision. While Justice Donahue authored a concurring and dissenting opinion, in which Justice Wecht joined, Justice Mundy authored a dissent. Thus, sections I, II(A), II(B), and III garnered joinders of a plurality of the Court.

detention that was not justified under the public servant exception. In that case, a trooper, driving in his police cruiser on the highway at night, noticed that a vehicle was stopped on the shoulder of the road, and that the car's engine was running but the hazard lights were not activated. *Id.* at 614. The trooper then activated his emergency lights and, with his passenger-side window rolled down, pulled alongside the vehicle. *Id.* The trooper's subsequent interaction with the defendant-driver led to her arrest and the filing of several charges for driving while intoxicated. *Id.* at 614-15. The defendant filed a motion to suppress evidence of her blood alcohol content on the basis that, once the trooper activated his overhead emergency lights, she was subjected to an investigatory detention unsupported by reasonable suspicion. *Id.* at 615. The trial court denied the motion, finding the interaction between the trooper and the defendant constituted a mere encounter. *Id.*

On appeal, this Court affirmed the trial court's determination that the initial stop was a mere encounter that did not need to be supported by reasonable suspicion of criminal activity. *See Commonwealth v. Livingstone*, 135 A.3d 664 (Pa. Super. 2015). However, our Supreme Court granted Livingstone's petition for allowance of appeal, directed the parties "to address the potential application of a community caretaking rationale in the present circumstances," and listed the issue on discretionary review as follows: "[w]here a [p]olice [o]fficer approaches a voluntarily stopped motorist with emergency lights activated, would a reasonable motorist feel that she

was not free to leave prior to the approaching officer stopping to interact with her, or, simply passing her by?" ***Commonwealth v. Livingstone***, 135 A.3d 1016, 1016 (Pa. 2016) (*per curiam*).

In its decision, the Supreme Court ultimately concluded that Livingstone was seized because the activation of the police vehicle's emergency lights effected an investigative detention. Specifically, the Court stated:

> It is undeniable that emergency lights on police vehicles in this Commonwealth serve important safety purposes, including ensuring that the police vehicle is visible to traffic, and signaling to a stopped motorist that it is a police officer, as opposed to a potentially dangerous stranger, who is approaching. Moreover, we do not doubt that a reasonable person may recognize that a police officer might activate his vehicle's emergency lights for safety purposes, as opposed to a command to stop. Nevertheless, upon consideration of the realities of everyday life, particularly the relationship between ordinary citizens and law enforcement, we simply cannot pretend that a reasonable person, innocent of any crime, would not interpret the activation of emergency lights on a police vehicle as a signal that he or she is not free to leave.
>
> . . .
>
> The fact that motorists risk being charged with violations of the Motor Vehicle Code if they incorrectly assume they are free to leave **after a patrol car, with its emergency lights activated, has pulled behind or alongside of them** further supports our conclusion that a reasonable person in [Livingstone's] shoes would not have felt free to leave.

***Livingstone***, 174 A.3d. at 621-22 (emphasis added) (internal citations omitted).[5] ***See also Commonwealth v. Thran***, 185 A.3d 1041, 1044–45

_____

[5] The ***Livingstone*** Court cites to both the Pennsylvania Driver's Manual (PDM) and the Motor Vehicle Code as further support for its conclusion that a motorist would reasonably believe that he was not free to leave if an officer pulled alongside or behind his vehicle and activated his or her emergency lights. ***See***
*(Footnote Continued Next Page)*

- 10 -

(Pa. Super. 2018) (where officer activated emergency overhead lights when stopping defendant, Court acknowledged interaction between defendant and officer would have been mere encounter if lights had not been activated; however, defendant was subjected to investigatory detention when officer activated emergency lights).[6]

The **Livingstone** Court also considered whether the defendant's seizure could be justified under the  public servant exception.  **Livingstone**, **supra**, at 626-27.  Recognizing for the first time "that a warrantless search or seizure may nonetheless be deemed reasonable under the Fourth

_____

*id.* at 621-22 ("The PDM first provides:  "You will know a police officer wants you to pull over when he or she activates the flashing red and blue lights on top of the police vehicle.' . . . [and] further 'recommends' that drivers follow certain procedures '[a]nytime a police vehicle stops behind you . . .' Moreover, pursuant to Pennsylvania's Motor Vehicle Code, a driver of a motor vehicle 'who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer' . . . may be convicted of a second-degree misdemeanor.") (citing Pa. Driver's Manual at 78, available at http://www.dot.state.pa.us/Public/DVSPubsForms/BDL/BDLManuals) (last visited 6/21/21); 75 Pa.C.S. §§ 3325(a), 3733(a)-(b)).

[6] Although **Livingstone** held the use of emergency lights alone was sufficient to constitute an investigative detention, as in the instant case, other cases citing **Livingstone** have involved the use of both emergency lights and sirens. **See**, **e.g.**, **Commonwealth v. Wilson**, 237 A.3d 572, 578 (Pa. Super. 2020) ("[T]he corporal displayed authority over [the defendant] which restrained his freedom of movement from the moment he turned his emergency lights and siren on."); **Commonwealth v. Venable**, 200 A.3d 490, 499 (Pa. Super. 2018) ("Here, [the defendant] was subjected to a seizure when Sergeant Johnston activated his lights and sirens to conduct the traffic stop, notwithstanding [the defendant's] failure to comply immediately[.]") (quoting **Livingstone**, **supra** at 621).

- 11 -

Amendment when conducted pursuant to the public servant exception," the

Court stated:

> [I]n order for a seizure to be justified under the public servant exception to the warrant requirement under the community caretaking doctrine, **the officer must point to specific, objective, and articulable facts which would reasonably suggest to an experienced officer that assistance was needed; the police action must be independent from the detection, investigation, and acquisition of criminal evidence;** *and*, **based on a consideration of the surrounding circumstances, the action taken by police must be tailored to rendering assistance or mitigating the peril.** Once assistance has been provided or the peril mitigated, further police action will be evaluated under traditional Fourth Amendment jurisprudence.

*Id.* at 637-38 (emphasis added).

Although the test above was referred to as a "reasonableness" test, the

list of specific factors and use of the word "and" indicate all three prongs are

required for the public servant exception to apply. Indeed, the Court found

the public servant exception did not apply in ***Livingstone*** because the officer

failed to satisfy the first prong:

> We have no reason to doubt [the trooper's] statement that he pulled alongside Appellant's vehicle simply to check to see whether she needed assistance. However, *regardless of his intentions*, based on our review of the record, [the trooper] was unable to articulate any specific and objective facts that would reasonably suggest that Appellant needed assistance. Indeed, [the trooper] conceded that he had not received a report of a motorist in need of assistance, and did not observe anything that outwardly suggested a problem with Appellant's vehicle. Moreover, although it was dark, the weather was not inclement. Finally, Appellant, who was inside her vehicle, did not have her hazard lights on.
>
> Thus, we are constrained to hold that [the trooper's] seizure of Appellant was not justified under the public servant exception,

and, therefore, that the evidence obtained as a result of that seizure should have been suppressed at trial.

*Id.* at 638 (emphasis added).

Here, the suppression court did not address whether a seizure occurred when Trooper Lantzy first pulled to the side of the road to investigate the situation, but the court did acknowledge that Trooper Lantzy activated his emergency lights when he pulled behind Savino's vehicle.[7] The trial court relies on an unpublished memorandum decision, ***Commonwealth v. Robertson***, 209 A.3d 1041 (Pa. Super. 2019) (Table), to conclude that Lantzy's actions were justified under the public servant exception. However, in addition to the fact that this case is not binding authority,[8] the facts of the instant case are readily distinguishable from those in ***Robertson***.

In ***Robertson***, two Harrisburg City police officers, on patrol at 3:45 a.m., were driving down a narrow two-way street with cars parked on both sides when they noticed a vehicle, with two motionless occupants, parallel-parked on the opposite side of the street. The officers testified that Harrisburg City police officers have experienced "numerous" situations in the past where similar individuals were in need of assistance. The officers pulled their police

---

[7] Trial Court Opinion, 8/5/19, at 1-2 ("Lantzy headed south on 11/15, pulled in approximately 25 feet behind [Savino's vehicle], and initiated his emergency lights"). ***See also*** N.T. Suppression Hearing, 8/5/19, at 3-4.

[8] While we recognize that non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value pursuant to Pa.R.A.P. 126(b), "[a]n unpublished memorandum decision filed prior to May 2, 2019, shall not be relied upon or cited by a [c]ourt or a party in any other action or proceeding[.]" ***See*** I.O.P. 444.C; Pa.R.A.P.126(b). ***Robertson*** was filed on February 5, 2019; thus, the trial court could not rely upon it for its persuasive value.

SUV alongside the driver's side of the parked car, blocking it in, effectuating a seizure.[9] Based on the occupants' demeanor and behavior during the interaction that followed, the officers suspected they were under the influence of drugs or alcohol; two bags of marijuana were ultimately recovered from the vehicle. Robertson filed a motion to suppress, arguing that all evidence recovered as a result of the seizure, including the bags of marijuana, should be suppressed as the fruit of an illegal detention. The trial court denied the motion. On appeal, this Court found that the officers' actions were justified under the public servant exception, holding the officers' observation of Robertson, "leaning back and motionless in his car at 3:45 a.m." from the opposite side of a narrow two-way street, constituted "specific, objective, and articulable" facts that would reasonably suggest to an experienced officer that Robertson needed assistance. *Id.* at 1046 (internal citations omitted).

Here, unlike the officers in *Robertson,* Trooper Lantzy had activated his emergency lights at the time he pulled up behind Savino and before he exited his vehicle to investigate the situation. Thus, under *Livingstone*, Savino was effectively seized at that time. The next question, therefore, is whether the seizure was supported by reasonable suspicion.

Instantly, Trooper Lantzy testified that "when [he] observed [Savino's] vehicle on the opposite side of the road," "[t]here was nothing illegal about

---

[9] Unlike the instant case, the police officers in *Robertson* did not activate their emergency lights, but rather Robertson was seized because his vehicle was unable to legally exit its parking space when the police pulled their SUV alongside it. *Id.* at 1045.

what she was doing being parked there." N.T. Suppression Hearing, 8/5/19, at 13-14. Trooper Lantzy also "didn't notice anything out of the ordinary when [he] first pulled up while [he] was still in [his] vehicle." *Id.* at 6; *cf. Robertson*, *supra*. Additionally, Trooper Lantzy did not have any other reason to detain Savino. *Id.* at 19 ("Q: At the time of the stop, are you aware of any kind of notice that she was to be detained? In other words, was there a bench warrant or anything issued and outstanding against her? A: Not that I recall."). Thus, there were no independent grounds to seize Savino.

Next, we examine whether Savino's detention was otherwise justified under the Fourth Amendment. Instantly, the Commonwealth argues, and the trial court found that the seizure was reasonable under the "public servant exception" to the warrant requirement.[10] In light of the *Livingstone* holding, we conclude that the public servant exception is not applicable here.

Trooper Lantzy was unable to articulate any *specific* and *objective* facts that would reasonably suggest a citizen needed assistance at the time he

---

[10] The *Livingstone* Court clarified:

> [The] use of the phrase 'exception to the warrant requirement' suggests that a warrant generally would be required; yet . . . a search conducted under the community caretaking doctrine, when viewed objectively, must be independent from the investigation of criminal activity, and thus, in such circumstances, there would be no basis upon which to obtain a warrant in the first instance. Nevertheless, as most courts characterize the community caretaking doctrine as an 'exception' to the warrant requirement, [the Court] will occasionally employ that language as well.

*Livingstone*, *supra* at 626 n.11.

activated his emergency lights and pulled behind Savino's vehicle. *Cf.* ***Robertson***, *supra* (officers were reasonably concerned defendant was sick, dead, or intoxicated after observing him, from opposite side of narrow street, leaning back and motionless in parked car at 3:45 a.m.). To the contrary, Trooper Lantzy's own policy is to stop *any time* he sees someone parked on the side of the road, despite the lack of any other signals indicating the person is in distress. Trooper Lantzy explained, "any time I see a vehicle pulled over on the side of the road, be it with the four-ways on or no four-ways on, regardless, I stop and see if they're okay." N.T. Suppression Hearing, 8/5/19, at 3. The trial court found that Trooper Lantzy's observation of Savino "slumped over" into the passenger seat was a sufficient fact to reasonably suggest to the trooper that his assistance was needed. However, Trooper Lantzy's own testimony refutes this assertion; the trooper testified that he assumed Savino was slumped over because she was digging through her purse or looking at her phone. *Id.* at 3 ("It appeared that the driver had or – was either looking at the phone or digging in their purse[,] but slumped over towards the passenger seat."); *id.* at 4 (Q: "You mentioned that possibly looking at her phone or looking at her purse, something like that. A: Yes. Q: Did you know that for sure? A: No. It was just an assumption.").

Thus, at the time Trooper Lantzy activated his emergency lights and pulled behind Savino's vehicle, he admittedly did not perceive any need for assistance. Trooper Lantzy only recognized Savino's need for assistance *after*

he effected a seizure and approached her car window. *See id.* at 6-7 (Trooper Lantzy testifying, "I didn't notice anything out of the ordinary when I first pulled up while I was still in my vehicle."); *id.* at 14 (Q: "When was the very first time that you believed that she was doing something illegal? A: Upon my arrival to the vehicle and found her unresponsive"). *Cf. Robertson*, *supra*. Moreover, the interaction between Trooper Lantzy and Savino occurred during the daytime and Savino had not otherwise indicated a need for assistance.[11] Thus, we are constrained to hold that Trooper Lantzy's seizure of Savino was not justified under the public servant exception, and, therefore, the evidence obtained as a result of that seizure should have been suppressed at trial. *Livingstone*, *supra*.

Accordingly, we conclude that the suppression court erred in denying Savino's suppression motion where its legal conclusions are not supported by the evidence of record. *Gaul*, *supra*; *Dean*, *supra*. Trooper Lantzy lacked reasonable suspicion at the time he effected the investigatory detention. Moreover, Trooper Lantzy was unable to articulate any specific objective facts that reasonably suggested a citizen needed assistance *at the time he pulled behind Savino's vehicle and activated his emergency lights*. Thus, the public servant exception to the warrant requirement does not apply, and the seizure

_____

[11] Savino's hazard lights did not appear activated, nor did the weather appear inclement in the dash camera video. *See* Dash Camera Video, 5/28/18. However, neither Trooper Lantzy nor Savino testified with regard to the weather at the time of the stop or whether Savino had her hazards activated when Trooper Lantzy first observed her vehicle or any time prior to activating his emergency lights.

of all physical evidence from the illegal investigative detention of Savino should have been suppressed. *Livingstone*, *supra*.

Judgment of sentence vacated. Order reversed. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.[12]

Judge Musmanno joins this Memorandum.

Judge Stabile files a Concurring Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/14/2021

---

[12] While I share many of the same concerns that my esteemed colleague has expressed in his concurring statement, unless and until the United States Supreme Court, Pennsylvania Supreme Court, or the Legislature concludes otherwise, we are bound by the *Livingstone* holding under the almost indistinguishable facts of this case.